**UNITED STATES of America, Appellee,**

v.

**Leighton Lee FAY, Appellant.**

No. 81–1605.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1981.

Decided Dec. 30, 1981.

Stanley E. Whiting, argued, Day, Grossenburg & Whiting, Winner, S.D., for appellant.

Terry L. Pechota, U. S. Atty., Sioux Falls, S. D., Dawn Bowen, argued, Asst. U. S. Atty., Pierre, S. D., for appellee.

Before HENLEY and ARNOLD, Circuit Judges, and HARRIS,* Senior District Judge.

HENLEY, Circuit Judge.

Defendant appeals his conviction of four counts of assault resulting in serious bodily injury, three counts of assault with a dangerous weapon, and one count of assault by striking, beating, or wounding. We affirm in part and reverse in part.

The charges against defendant arose out of what was apparently a New Year's Day free-for-all involving defendant, an Indian male, and a number of Indian women. On December 31, 1980 defendant drove from Oglala, South Dakota, on the Pine Ridge Reservation, to a New Year's Eve celebration at a bowling alley in Eagle Butte, South Dakota, on the Cheyenne-Eagle Butte Indian Reservation. He was accompanied by his girlfriend Agnes Randall, her aunt Verna Flying Hawk, and her cousin Fay Charging Thunder. They were later joined at the bowling alley by Leah Black Moon. At some point during the festivities, Leah became engaged in an altercation with Sylvia High Bear. One of Sylvia's companions, Anita Traversie, was knocked from her stool, and it appears that Fay, Agnes, and possibly Verna also became involved. Both groups were asked to leave sometime after midnight.

The record reveals as many different accounts of the subsequent events as there

* The Honorable Oren Harris, United States Senior District Judge, Eastern and Western Districts of Arkansas, sitting by designation.

were witnesses. It appears, however, that defendant went with Agnes, Fay, Verna, and Leah to Leah's home, and that later in the morning, Sylvia's sister Freda Fish came to Leah's house accompanied by Sylvia's daughter Pauline High Bear, and Anita. It is not clear how the women got inside the house, but once they were inside several fights ensued involving the women, but allegedly not the defendant who testified that he first went outside and then went upstairs "to avoid hassling with them." After it became quiet, defendant started to go downstairs, but was said to have been met on the landing by Freda, Pauline, and Anita. Defendant testified that Freda had a knife in her hand and that he struggled with the three women, during which time he grabbed Freda's hand holding the knife and lashed out. Anita, Freda, and Pauline all suffered serious stab wounds. Defendant then took the knife and went back upstairs where he stated that he accidently stabbed Verna as he was forcibly entering the bathroom. Returning downstairs, he allegedly found Leah kneeling on the floor near the door to the kitchen and told Agnes to "call the cops." The police, who had already been notified, arrived shortly thereafter and found defendant in an upstairs bedroom. Leah was found dead in or near the kitchen.

Defendant was charged with second degree murder for the death of Leah, four counts of assault with a deadly weapon in violation of 18 U.S.C. §§ 1153 and 113(c), and four counts of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153 and 113(f). On May 15, 1981, following a jury trial, defendant was acquitted of the murder charge, but was found guilty of four counts of assault resulting in serious bodily injury, three counts of assault with a dangerous weapon, and one count of assault by striking, beating, or wounding. He was sentenced to forty-five years and six months.

Defendant appeals on the following grounds: (1) the trial court erred in excluding evidence of Pauline's and Anita's characters, (2) the trial court erred in allowing impeachment of defendant by use of prior convictions, (3) the indictment charged multiplicitous counts, (4) the trial court erred in excluding evidence of Anita's frame of mind, (5) the trial court erred in refusing defendant's request for an intoxication instruction, (6) the trial judge made prejudicial remarks in front of the jury, and (7) the sentence imposed was based on improper considerations.

We are most troubled by the trial court's refusal to instruct the jury on intoxication as a defense to assault with a deadly weapon on which includes the element of specific intent to do bodily harm. Because the charges of assault resulting in serious bodily injury and assault by striking, beating, or wounding do not require more than general intent, the trial court's failure to give an intoxication instruction does not affect defendant's convictions on these counts.

■ A criminal defendant is entitled to an instruction on a theory of defense "if he makes a timely request for such an instruction, if the request is supported by evidence and if it sets out a correct declaration of law." *United States v. Manning*, 618 F.2d 45, 47–48 (8th Cir. 1980), *citing United States v. Brake*, 596 F.2d 337, 339 (8th Cir. 1979). The pertinent part of defendant's proposed instruction reads as follows:

> [W]henever the existence of any particular purpose, motive or intent is a necessary element to constitute the crime charged, the jury may take into consideration the fact, if it is a fact, that the accused was intoxicated at the time of the alleged offense in determining the purpose, motive, or intent with which he committed the act, if he did commit it.

The district court refused to give an intoxication instruction on the ground that there was insufficient evidence to support this theory of defense. We note, however, that there was testimony that defendant and his companions made several stops during the afternoon and evening of New Year's Eve to purchase beer and liquor, and that defendant had "passed out" on the couch at Leah's before Freda and her companions arrived. The evidence further suggests

that defendant had been drinking from time to time and perhaps almost continuously during the twenty-four hour period preceding the outbreak of violence at Leah's house. Although defendant did not testify that he was intoxicated, we think the evidence would support a finding that he was in fact intoxicated and that as a result there was a reasonable doubt that he lacked the specific intent to do bodily harm. In view of the policy that "trial judges should be liberal in permitting the defendant's theory of defense to be explained to the jury," *United States v. Brown*, 540 F.2d 364, 381 (8th Cir. 1976), we conclude that it was error for the trial court to deny defendant's timely request for an intoxication instruction. Furthermore, because we find that the trier of fact could reasonably have been influenced by the trial court's failure to give such an instruction, we must reverse defendant's convictions on the counts of assault with a deadly weapon and remand for new trial.

Another of defendant's contentions concerns his attempt to introduce character evidence with respect to Anita, Pauline, and Freda in support of a self-defense theory. Specifically, defendant sought to introduce evidence of the reputations of all three women for violence, and also evidence of a prior assault conviction against Anita. The character evidence was admitted against Freda. The district court, however, sustained the government's objection to the introduction of character evidence against Pauline and Anita on the ground that there was insufficient evidence to support a theory of self-defense regarding these two women. The government submits that this ruling is further supported by defendant's own assertions that he did not remember stabbing anyone, but, if he did, he did so accidentally while struggling with Freda for the knife. Defendant, on the other hand, argues that the evidence supports an alternative theory of self-defense based on his allegations that Anita and Pauline were hitting and pulling at him and that he did not know if they were armed.

We note initially that defenses need not be consistent; that is, defendant is permitted to raise the defenses of accident *and* self-defense. *See Sherrill v. Wyrick*, 524 F.2d 186, 188 (8th Cir. 1975), *cert. denied*, 424 U.S. 923, 96 S.Ct. 1134, 47 L.Ed.2d 332 (1976). The trial court seems to have based its decision to permit character evidence to be introduced against Freda but not against Pauline and Anita on the fact that Freda was the only one of the three women who was allegedly armed. We know of no rule that an attacker must be armed before one can raise a self-defense issue, although whether an attacker is armed may be relevant in determining the degree of force one is entitled to use to protect oneself. Thus, the fact that Freda was the only one allegedly armed should not by itself bar defendant from raising a self-defense issue with respect to Pauline and Anita.

In addition, the record discloses that the court gave a self-defense instruction pertaining to the charges of assaulting all three women in spite of the earlier ruling that the evidence was insufficient to support a self-defense theory against Pauline and Anita. In view of these instructions, we find it difficult to justify the admission of character evidence against Freda but not against Pauline and Anita. However, we find the error, if any, harmless. The jury convicted defendant of assault with respect to Freda, against whom the offered character evidence was admitted. There is no reason to believe the jury would have reached a different verdict with respect to Anita and Pauline had the tendered character evidence been admitted against them. After all, the women had been drinking and fighting all night. Little would have been added by showing they had a propensity toward violence.

Defendant also contends that the trial court erred in excluding testimony concerning an alleged statement by Anita to her mother, Beatrice Traversie, that she was going to Leah's house and "fight like hell." Anita denied making this statement. When defense counsel questioned Beatrice

about the statement, the government objected and defense counsel made an offer of proof that Beatrice would have also denied the statement. Counsel then revealed that he intended to call Norma Black Moon to testify that Beatrice repeated this statement to her the morning after the fight. It is defendant's position that the testimony was admissible to impeach Beatrice and to show Anita's state of mind.

The government correctly characterizes Norma's testimony as hearsay within hearsay, and therefore both Anita's statement to her mother and Beatrice's repetition of the statement to Norma must be independently admissible. Fed.R.Evid. 805. Anita's statement to Beatrice is arguably admissible either under Rule 803(3) as showing her then existing state of mind, or under Rule 613(b) as evidence of a prior inconsistent statement offered to impeach Anita. Beatrice's repetition of Anita's statement to Norma, however, is admissible, if at all, only under Rule 613(b) as a prior inconsistent statement offered to impeach Beatrice. The government argues that the trial court properly excluded the testimony because defendant admittedly called Beatrice knowing she would deny the statement and intending to impeach her with Norma's testimony. Although Rule 607 allows a party to impeach his own witness, "[c]ourts must be watchful that impeachment is not used as a subterfuge to place otherwise inadmissible hearsay before the jury." *United States v. Rogers*, 549 F.2d 490, 497 (8th Cir.), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1976), *citing United States v. Morlang*, 531 F.2d 183, 189 (4th Cir. 1975) ("[I]t has never been the rule that a party may call a witness where his testimony is known to be adverse for the purpose of impeaching him.") We cannot say the trial court abused its discretion in excluding this evidence.

Defendant argues that the trial court erred in allowing the government to impeach him under Rule 609 by the introduction of prior convictions. Defendant was convicted in 1962 in California of assault with a deadly weapon, and was released from prison in 1973. He was subse-

quently convicted in 1977 of possession of a firearm by a felon. Defense counsel requested a determination prior to defendant's taking the stand of the admissibility of these convictions. The trial court refused and later allowed the convictions to be introduced for impeachment purposes with the limitation that the nature of the assault conviction could not be disclosed. Defendant contends that the prejudicial effect of these convictions outweighed their probative value and that they were therefore improperly admitted.

■ First, we note that defendant was not entitled to a determination of the admissibility of the convictions prior to taking the stand. *United States v. Johnston*, 543 F.2d 55, 59 (8th Cir. 1976). Nor can we say that the trial court abused its discretion in admitting this evidence. The record shows that the court carefully considered the relevant factors and limited the prejudicial effect by prohibiting the disclosure of the nature of the assault conviction.

■ We find no merit in defendant's claim of error in the trial court's failure to dismiss four of the assault counts on the ground that the indictment charges multiplicitous offenses. This precise issue was resolved in *United States v. Eagle*, 586 F.2d 1193, 1196–97 (8th Cir. 1978), wherein this court concluded—based on the required elements of assault with a dangerous weapon and assault resulting in serious bodily injury, and on the legislative history—that Congress intended two separate offenses. Equally without merit is defendant's claim that the judge's remarks about a hypothetical posed to a pathologist by the defense counsel indicated a prejudicial "negative attitude" on the part of the judge.

■ Finally, defendant challenges his sentence on the ground that the trial court improperly considered information in his presentence report concerning an alleged stabbing incident involving defendant's ex-wife. However, the court allowed defendant to explain that he was never tried or convicted of the assault, and the court stated that it would completely disregard the

alleged stabbing. The trial court will not be presumed to have considered something explicitly disregarded. *United States v. Bailey*, 547 F.2d 68, 71 (8th Cir. 1976). 'The sentence was within the statutory limits and we find no evidence that it was improperly motivated.

For reasons discussed herein, the judgment of the district court with respect to Counts III, VII, and IX is reversed.

Affirmed in part, reversed in part, and remanded for proceedings in accordance with this opinion.