UNITED STATES of America,
Plaintiff–Appellee,

v.

Delano Romanus OAKIE,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Kirk Morin OAKIE, Defendant–Appellant.

Nos. 92–3268, 92–3622.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1993.

Decided Dec. 17, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 27, 1994 in No. 92–3622 and Jan. 28, 1994 in No. 92–3268.

Jerry L. Wattier, Pierre, SD, argued, for Delano Oakie.

Jamie L. Post, Pierre, SD, argued, for Kirk Oakie.

David L. Zuercher, U.S. Atty., Pierre, SD, argued, for plaintiff-appellee.

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

LOKEN, Circuit Judge.

Delano Romanus Oakie and Kirk Morin Oakie, residents of the Cheyenne River Indian Reservation in South Dakota, appeal their convictions for assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(c), use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), and assaulting a federal officer with a dangerous weapon in violation of 18 U.S.C.

§ 111. Delano Oakie also appeals his sentence and his additional conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendants argue numerous issues on appeal. We affirm.

## I.  Sufficiency of the Evidence.

As defendants challenge the district court's [1] ruling that the evidence was sufficient to convict, we review that evidence in the light most favorable to the government. *See United States v. LaChapelle,* 969 F.2d 632, 633 n. 1 (8th Cir.1992). On the evening of October 18, 1991, Tribal Officer Leslie Shooter came to the home of LaMarr Avery, Delano Oakie's next door neighbor, looking for a suspect in an alcohol-related disturbance earlier that evening. At that time, Delano Oakie was driving Avery's borrowed car with Kirk Oakie, their friend Wallace Rooks, and Delano's nephew, Shane Oakie, as passengers. All had been drinking heavily. The group was about to pull into the Oakie/Avery common driveway when Delano saw Officer Shooter's tribal police car parked at the Avery residence. Delano turned the Avery car around and sped away, telling his passengers he wished to avoid tribal warrants for his arrest.

Thinking his suspect might be in Avery's fleeing vehicle, Officer Shooter gave chase, turning on his car's red flashing overhead lights as he left the driveway. When the Avery car did not stop, Officer Shooter turned on his siren and shined his car's spotlight on the fleeing vehicle. Delano accelerated, leading Officer Shooter over a rough dirt trail and pastures and crashing through several barbed wire fences.

As the chase continued, Delano asked Wallace Rooks to locate a rifle that Delano had retrieved from Avery's house and placed in the rear of Avery's car earlier that evening. Rooks grabbed the rifle and knocked out the car's rear window. Kirk Oakie found bullets under the seat, handed one to Rooks, and told Rooks to "hurry up and shoot that fucker." Rooks fired five or six shots at Officer Shooter's car through the rear window open-

ing, with Kirk handing Rooks the bullets one at a time. One bullet struck the police car's windshield; glass fragments shattered Officer Shooter's glasses, sprayed into his eyes, and cut his cheek and eyebrow. Officer Shooter stopped his car, laid down on the front seat, and informed the police dispatcher that he had been shot and needed assistance.

Fearing serious injury, Officer Shooter resumed driving to find help. He caught up with the Avery vehicle parked on the road. Delano Oakie, standing outside that car, aimed the rifle at Officer Shooter's car and fired at least once. Seeing the muzzle flash, Officer Shooter stopped his car and laid down in the front seat until the Avery vehicle drove away. Defendants eventually abandoned the car at a gravel pit and walked to Wallace Rooks's home, where they spent the night. Delano Oakie asked Rooks to hide the rifle. Rooks placed it under his sister's mattress.

Defendants argue that this evidence was insufficient, primarily because Rooks did most of the shooting. We disagree. Applying our familiar sufficiency of the evidence standard, *see United States v. Schmidt,* 922 F.2d 1365, 1368 (8th Cir.1991), we conclude that there was more than enough evidence to convict each defendant of assault with a dangerous weapon with intent to do bodily harm and of using a firearm during a crime of violence (or of aiding and abetting Rooks to commit those crimes), and to convict Delano Oakie of being a felon in possession of the rifle used in the assaults.

## II.  The Federal Officer Issue.

The evidence was also sufficient to convict defendants of assaulting a federal officer in violation of 18 U.S.C. § 111. Defendants argue that the government failed to prove that Shooter, a tribal officer, was a federal officer within the purview of § 111 at the time of the assaults. Section 111 makes it a federal crime to assault anyone designated in 18 U.S.C. § 1114, which includes "any officer or employee of the . . . Department of

---

1. The HONORABLE DONALD J. PORTER, Senior United States District Judge for the District of South Dakota.

**1440**

the Interior ... assigned to perform investigative, inspection, or law enforcement functions." Officer Shooter testified that, at the time in question, he was employed by the Cheyenne River Sioux Tribe and was also a "Deputy Special Officer" of the Interior Department's Bureau of Indian Affairs ("BIA"). Dwain Holland, BIA's Area Special Officer for law enforcement, testified that BIA Deputy Special Officers are authorized to investigate any violation of federal law in Indian country, such as firearms violations, liquor violations, and assaults.

■ Whether a BIA Deputy Special Officer is an officer or employee of the Department of Interior for purposes of § 111 is an issue of law for the court. *Compare United States v. Lopez,* 586 F.2d 978 (2d Cir.1978), *cert. denied,* 440 U.S. 923, 99 S.Ct. 1251, 59 L.Ed.2d 476 (1979); *United States v. Reid,* 517 F.2d 953, 958–60 (2d Cir.1975). The statute cannot be limited to BIA employees because that would make the reference in § 1114 to "any *officer or* employee" surplusage. Section 111 was intended "to protect *both* federal officers and federal functions." *United States v. Feola,* 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975) (emphasis in original). Thus, both the language and the purpose of the statute compel the conclusion that a tribal law enforcement officer who has been designated a BIA Deputy Special Officer is entitled to the protections of § 111 when performing the federal functions he or she has been deputized to perform.[2] *See United States v. Chunn,* 347 F.2d 717, 721 (4th Cir.1965) (undercover state agent on loan to the Internal Revenue Service and assisting federal agents is a federal officer for purposes of § 111); *see also United States v. Torres,* 862 F.2d 1025, 1029–30 (3d Cir.1988), and cases cited.

■ Whether Officer Shooter was in fact a BIA Deputy Special Officer, and whether he

was performing federal "investigative, inspection, or law enforcement functions" at the time of the assaults, were fact questions for the jury. *See United States v. Hanson,* 618 F.2d 1261, 1264 (8th Cir.), *cert. denied,* 449 U.S. 854, 101 S.Ct. 148, 66 L.Ed.2d 67 (1980).[3] The district court properly instructed the jury on these issues, defendants did not object to the instruction, and the evidence was sufficient to support the jury's finding that Officer Shooter was engaged in his duties as a BIA Deputy Special Officer at the time of the assaults. Accordingly, defendants' motions for judgment of acquittal were properly denied.

**III. Section 924(c) Issues.**

■ Count II of the indictment charged that defendants "during and in relation to [an] Assault with a Dangerous Weapon ... did use and carry a firearm in violation of 18 United States Code Section 924(c)." Defendants argue that Count II failed to charge a crime since it did not allege that the defendants acted "knowingly." We approved a § 924(c) indictment that did not expressly allege that the defendant acted knowingly in *United States v. Mills,* 835 F.2d 1262, 1263 (8th Cir.1987). Like the indictment in *United States v. Gutierrez,* 978 F.2d 1463, 1466–67 (7th Cir.1992), the indictment in this case closely tracked the language of the statute and therefore fairly imported the scienter requirement of § 924(c). The case upon which defendants rely, *United States v. Hawkins,* 741 F.Supp. 1234 (N.D.W.Va.1990), has been explicitly rejected by its own circuit. *See United States v. Sutton,* 961 F.2d 476, 479 n. 2 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 171, 121 L.Ed.2d 118 (1992).

■ Defendants further argue that they were placed in double jeopardy when they were tried for assault with a dangerous

---

**2.** In *United States v. Schrader,* 10 F.3d 1345 at 1350–51 (8th Cir.1993), we held that a tribal officer may be protected by § 111 even when enforcing tribal laws, provided BIA has designated the officer to perform under a 25 U.S.C. § 2804(a) contract between BIA and the tribe. As there is no evidence of a § 2804(a) contract in this case, the government was required to prove that Officer Shooter was enforcing federal law as

a Deputy Special Officer when he was assaulted by defendants.

**3.** The Eighth Circuit *Manual of Model Criminal Jury Instructions* § 6.18.111, n. 1, recites: "Whether a person is a federal officer is a question of law for the court." To the extent this statement is inconsistent with *Hanson,* it is disapproved.

weapon, and for use of a firearm during that assault in violation of § 924(c). We rejected this contention in *United States v. Mills*, 835 F.2d 1262, 1264 (8th Cir.1987), because "Congress has specifically authorized cumulative punishment under two statutes." The Sentencing Guidelines did not alter this legislative authority. *See United States v. Halford*, 948 F.2d 1054, 1056–57 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992).

### IV. Alleged Errors at Trial.

■ *A. Severance.* Delano Oakie argues that the district court abused its discretion in denying his motion for severance. The motion was made on the fourth day of trial, when Delano learned that Kirk Oakie would not testify. Because defendants who are jointly indicted on similar evidence from the same or related events should normally be tried together, to warrant severance a defendant must show "real prejudice," that is, "something more than the mere fact that he would have had a better chance for acquittal had he been tried separately." *United States v. Adkins*, 842 F.2d 210, 211–12 (8th Cir.1988).

■ Delano Oakie first argues that severance was appropriate because Kirk Oakie would have testified in Delano's favor at a separate trial. Counsel for Kirk Oakie advised the court that Kirk would testify that Delano did not fetch the rifle from LaMarr Avery's house, that Kirk did not remember seeing Delano shoot the rifle at the end of the car chase, that neither Kirk nor Delano told Wallace Rooks to fire at Officer Shooter, and that the group was not laughing and joking during the chase. The government opposed severance, noting that Kirk Oakie's contradictory pretrial statement to the FBI had implicated Delano in the shooting. To warrant severance on this ground, a defendant must show that the co-defendant's testimony would be "substantially exculpatory"—that it "would do more than merely tend to contradict a few details of the government's case." *United States v. DeLuna*, 763 F.2d 897, 920 (8th Cir.) (internal quotation omitted), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). In light of the other

trial evidence and the impeachment evidence available to the government, we agree with the district court that the proffered testimony of Kirk Oakie did not meet this standard.

■ Delano next contends that he was entitled to a severance because he and Kirk presented antagonistic defenses: Kirk Oakie's cross examination of Wallace Rooks characterized Kirk and Shane Oakie as "prisoners in that car," whereas Delano's defense was that he believed he was being chased by an enemy, rather than the police, and did not know his passengers were shooting at the pursuing vehicle. To warrant severance on this ground, the co-defendants' defenses must be more than inconsistent, they must be "actually irreconcilable." *United States v. Mason*, 982 F.2d 325, 328 (8th Cir.1993). Kirk and Delano presented different defenses, but they were not irreconcilable or even antagonistic.

The district court did not abuse its discretion in denying Delano Oakie's motion to sever.

■ *B. Prior Acts Evidence.* Rule 404(b) of the Federal Rules of Evidence permits evidence of a defendant's "other crimes, wrongs, or acts" only for limited purposes and, if the defendant requests, only after reasonable notice of the general nature of any such evidence the prosecution intends to use. Delano requested such notice, and the government responded that it did not intend to introduce any Rule 404(b) evidence. During the government's case-in-chief, Wallace Rooks testified that he believed Delano drove away from the Avery residence because Delano "had some old warrants on him." In addition, the government impeached Shane Oakie with his statement to the grand jury that, "Delano said he had a warrant out for him and didn't want to get caught."

Delano argues that this was Rule 404(b) evidence that should have been excluded because of the government's failure to notify him of its intent to use it. We disagree.

Evidence which is probative of the crime charged ... is not "other crimes" evidence. Further, where the evidence of an act and the evidence of the crime charged are inex-

tricably intertwined, the act is not extrinsic and Rule 404(b) is not implicated.

*DeLuna,* 763 F.2d at 913 (citations omitted). *See also United States v. Bettelyoun,* 892 F.2d 744, 746 (8th Cir.1989). In this case, evidence regarding why Delano turned the car around and fled explained the circumstances of the charged offense and was not Rule 404(b) evidence. Because this testimony was very brief and revealed no details concerning the outstanding warrants, it was not unduly prejudicial, and the district court did not abuse its discretion by admitting it.

### V. Jury Instruction Issues.

■ *A. Lesser Included Offense.* At the instructions conference, consistent with defendants' requested instructions, the district court proposed to instruct the jury on simple assault as a lesser included offense to assault with a dangerous weapon with intent to do bodily harm. *See* 18 U.S.C. § 113(c), (e). The government objected, explaining:

> MR. ZUERCHER [the prosecutor]: The evidence for the assault with a dangerous weapon would be that the gun was fired at the police officer. If the jury finds that a gun was not fired the jury would find that there was no assault. So, if the element were missing they could not rationally find the lesser [included offense of simple assault].

Defense counsel's response to the objection focused upon the second assault:

> MR. WATTIER: ... [T]he state of the testimony is that Wallace Rooks testified that he heard a shot, he saw Delano Oakie, a portion of him positioned facing toward the law enforcement vehicle. That the shot was fired and based on that I think the word was "assumed," you know, that he was shooting at the patrol vehicle. So, there is a dispute in the facts as to whether a shot was fired or not. And with that dispute the lesser included offense of simple assault needs to be submitted to the jury for their fact determination.

> \* \* \* \* \* \*

> MR. ROUBIDEAUX: The specific intent that's required, here, would certainly not be present in simple assault. Simple assault would be firing the gun without an intent to hit or injure the policeman.

> THE COURT: Well, but is it claimed they fired the gun at the officer's car?

> MR. ROUBIDEAUX: Well, firing the gun in the air would not be an assault at all.

The district court sustained the government's objection and did not give the lesser included offense instruction. This ruling was correct. "A trial court need not give a lesser included offense instruction when there is no basis upon which the jury could rationally find the defendant innocent of the more serious count, but guilty of the lesser count." *United States v. One Star,* 979 F.2d 1319, 1321 (8th Cir.1992).

On appeal, defendants make an entirely different argument—that the lesser included offense instruction should have been given because all the occupants of the car had been drinking and intoxication is a defense to assault with a dangerous weapon, but not to simple assault. This issue was not properly preserved. Rule 30 of the Federal Rules of Criminal Procedure requires a timely objection to a jury instruction "stating distinctly the matter to which that party objects, and the grounds of the objection." We have repeatedly held that an objection "must call attention to the specific fact situation that would require giving the lesser included offense instruction." *United States v. Young,* 875 F.2d 1357, 1360 (8th Cir.1989). Because defendants failed to give the district court an opportunity to rule on this theory, we may only consider it under the plain error standard.

■ Voluntary intoxication is a defense to a crime requiring proof of specific intent, but not to a crime requiring only proof of general intent. *See United States v. Norquay,* 987 F.2d 475, 480 (8th Cir.1993); *United States v. McMillan,* 820 F.2d 251, 258 (8th Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987); *United States v. Johnston,* 543 F.2d 55, 57 (8th Cir.1976). In *United States v. Fay,* 668 F.2d 375, 377–78 (8th Cir.1981), we held that, if the facts so warrant, a voluntary intoxication defense instruction must be given on a

charge of assault with a dangerous weapon.[4] In *Fay*, the government had also charged the lesser included offenses of assault resulting in serious bodily injury, and assault by striking, beating, or wounding. We noted that voluntary intoxication was not a defense to those charges, but we did not consider, and defendants have cited no other case considering, whether evidence of voluntary intoxication *requires* instructing on lesser included assault offenses when the government has charged only assault with a dangerous weapon under § 113(c).

On the facts of this case, the issue is even more complex. Defendants were charged and convicted of violating § 111, assault on a federal officer, as well as § 113(c), assault with a dangerous weapon. Section 111 includes an enhanced penalty if the person assaulting a federal officer "*uses* a deadly or dangerous weapon." § 111(b) (emphasis added). This is not the language of a specific intent statute. *Compare* § 113(c), which prohibits "Assault with a dangerous weapon, *with intent to do bodily harm*" (emphasis added). *See Feola*, 420 U.S. at 684, 95 S.Ct. at 1264 ("All [§ 111] requires is an intent to assault, not an intent to assault a federal officer"). Reflecting the confusion that permeates this subject, we have conflicting prior decisions as to whether specific intent is an element of a § 111 violation. *Compare United States v. Manelli*, 667 F.2d 695, 696 (8th Cir.1981), *with Hanson*, 618 F.2d at 1265. But no case has held, and defendants do not urge, that intoxication is a defense to a § 111 charge, with or without the § 111(b) penalty enhancement. Thus, even if defendants were entitled to an intoxication-based lesser included offense instruction under § 113(c), they admit they were not entitled to that instruction under § 111.

After lengthy argument by counsel at the instruction conference, the district court correctly decided that the nature of the alleged assaults did not justify a lesser included offense instruction. The court then properly instructed the jury that voluntary intoxication can be a defense to the § 113(c)

charge of assault with a dangerous weapon. In these circumstances, assuming without deciding that defendants were entitled to an instruction that voluntary intoxication can also justify conviction for the lesser offense of simple assault under § 113(e), the court's failure to give that instruction was not plain error.

**B. Self Defense.** Defendants next argue that the district court erred in refusing their request for a self defense instruction. Delano Oakie and Shane Oakie testified that they were frightened during the car chase and did not know that a police car was pursuing them. Delano also testified that he thought he was being pursued by a man who had threatened to harm him. However, even if the jury credited this testimony, there was no evidence that either defendant reasonably believed that shooting a rifle at the pursuing vehicle was reasonably necessary to protect himself. Kirk Oakie did not testify. Delano Oakie's defense was that he did not commit an assault—he denied firing the rifle at Officer Shooter and denied knowing that any of his companions were doing so. As there was no evidence that Officer Shooter took any aggressive action other than to give chase in a well-marked police car, we agree with the district court that the evidence did not support a self defense instruction. *See United States v. Goodface*, 835 F.2d 1233, 1235 (8th Cir.1987).

## VI. Sentencing Issues.

Delano Oakie appeals the assessment of a two-level enhancement for obstruction of justice. *See* U.S.S.G. § 3C1.1. He argues that the record does not support the district court's finding that he committed perjury at trial and that the enhancement undermines his right to testify in his own defense. In *United States v. Dunnigan*, —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court held that a § 3C1.1 enhancement does not infringe the defendant's right to testify so long as the sentencing judge reviews the trial evidence and makes an independent finding that de-

---

4. Well aware of our decision in *Fay*, the district court in this case charged the jury that intoxication was a defense to the specific intent element of assault with a dangerous weapon with intent to do bodily harm, as defendants had requested.

**1444**

fendant committed perjury at trial. The government has the burden to prove facts sufficient to support this enhancement. *See United States v. Ransom*, 990 F.2d 1011, 1013 (8th Cir.1993).

 In its sentencing memorandum, the district court reviewed the contradictions between Delano's testimony and that of other witnesses:

> Wallace Rooks' testimony contradicts the defendant's testimony in several spots regarding important issues. The defendant claimed at trial he did not know the gun was in his car, yet Rooks claims the defendant carried the gun out of a house to the car. The defendant claims he did not know the car at LaMarr's house was a tribal police car, yet Rooks states that they all saw the car and recognized it as a tribal police car. Also, the defendant claimed no talking occurred in the car during the chase, whereas Rooks testified that there was substantial excitement and conversation during this time. The record also contains contradictions between Shane's testimony and that of the defendant[ ] regarding whether the defendant ever shot the gun on the night in question.
>
> The testimony of other witnesses supports the probation officer's finding that the defendant perjured himself at trial, and, thus, obstructed justice.

Because the sentencing judge also heard the trial testimony in question, these findings are sufficiently specific to support an obstruction of justice enhancement. *See United States v. Benson*, 961 F.2d 707 (8th Cir.1992). The district court's ultimate perjury determination was not clear error.

We have carefully considered Delano Oakie's other sentencing contentions and conclude they are without merit.

The judgments of the district court are affirmed.