# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1442

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States District |
| | * | Court for the District of South Dakota. |
| Clifton Waters, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 18, 1999

Filed: October 5, 1999

_____

Before LOKEN, BRIGHT and ROSS, Circuit Judges

_____

ROSS, Circuit Judge.

Clifton Waters appeals his conviction for aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c) and 1153. He asserts that the district court[1] erred in certain evidentiary rulings, in refusing to instruct the jury on a lesser included offense, and in denying his motion for a new trial. We affirm.

**BACKGROUND**

---

[1]The Honorable Richard H. Battey, Senior Judge, United States District Court for the District of South Dakota.

Before indictment, at the government's request, Waters took a polygraph examination conducted by a special agent of the Federal Bureau of Investigation (FBI). Among other things, the agent asked Waters whether he had placed his fingers in the child's vagina or touched her "private areas in a sexual way." He answered "no" to both questions and the agent believed that the answers were not indicative of deception. In April 1998, a grand jury indicted Waters with one count of aggravated sexual abuse of a child in violation of 18 U.S.C. § 2241(c), which, in relevant part, makes it unlawful for a person to engage in a "sexual act" with a child under the age of 12 in a territorial jurisdiction. "Sexual act" is defined, in relevant part, as "penetration, however slight, of the anal or genital opening of another by a hand or finger" or "intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16" with an improper intent. 18 U.S.C. § 2246(2)(C) and (D).

Before trial, Waters sought to admit the results of the polygraph examination and requested a Daubert[2] hearing in order to establish the examination's scientific reliability. In response, the government moved to exclude all evidence relating to the examination and opposed the request for a Daubert hearing, relying on United States v. Scheffer, 523 U.S. 303 (1998). In Scheffer, the Supreme Court held that a per se exclusion of polygraph evidence under Military Rule of Evidence 707 was constitutional. Id. at 305. The district court conditionally granted the government's motion to exclude, subject to further ruling at trial.

At the September 1998 trial, the victim, who was then nine years old, testified that in December 1996 Waters took her to a house in Manderson, South Dakota (Indian

---

[2]In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993), the Supreme Court held that "[f]aced with a proffer of expert scientific testimony," a district court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."

country), and while they were sitting on a couch, he told her to take off her pants. She further testified that after she took off her underpants, Waters touched her "butt" and her "middle," which she described as the place "you go to the bathroom," with his hands. She also testified Waters had touched her "in my private places" and had done the "same thing" to her at her house.

On cross-examination, Waters' counsel asked the victim about prior statements she had given to an FBI agent. The victim testified that she had met with the agent several times and first told the agent that Waters had touched her "private areas over the top of [her] clothing," but on another occasion told the agent that Waters had put his "entire" hand inside her, and yet on another occasion said he had put three fingers "up inside" of her. The victim also admitted that she had not told the agent about the touching incident at her house. On re-direct examination, the victim explained that she did not tell the agent everything because she was scared.

On re-cross examination, Waters' counsel asked the victim "you didn't tell the truth when you told [the agent] that [Waters] touched you over the top of your jeans, did you?" She said "no." She also said "no" when counsel asked "[y]ou didn't tell the truth when you told [the agent] that there was another incident where he put three fingers into you, did you?" However, she answered "yes" when counsel asked "you didn't [tell] the truth when you told [the agent] that he put his whole hand up inside of you, did you?" Counsel then asked "[y]ou did tell the truth then?" She replied "no."

The government also presented the testimony of a pediatrician, who had examined the victim in October and December 1997. The pediatrician testified that the victim had no hymenal tissue, which was highly unusual in a child of that age and was consistent with repeated penetration of the vagina.

Waters testified in his defense. After he denied he had touched the victim in a sexual way either over or under her clothes, his counsel renewed the request for a

Daubert hearing regarding admissibility of the polygraph examination. However, he admitted he had no evidence concerning the reliability of the test. Although the district court observed that in Scheffer, 523 U.S. at 309, the Supreme Court noted the lack of scientific consensus on the reliability of polygraph examinations, the court held that it would "simply" exclude any evidence relating to the polygraph examination under Fed. R. Evid. 403.

In rebuttal, the government presented the testimony of a clinical social worker who specialized in child sexual abuse. The social worker testified that children "rarely tell you everything about an abuse the first time they are asked" and that "more information may come over a period of time." She also testified that children often leave out details of abuse because they are embarrassed.

At the conference on jury instructions, Waters withdrew previously submitted proposed instructions and handed the court a second set of proposed instructions, including an instruction on the lesser included offense of abusive sexual contact under 18 U.S.C. § 2244(a), which, as relevant here, requires evidence of "intentional touching, either directly or through the clothing, of the genitalia, anus, . . . or buttocks" of another person with an improper purpose. 18 U.S.C. § 2246(3). The court "invited counsel to outline the fact scenario" that would permit the jury to find Waters guilty of abusive sexual contact, yet acquit him of aggravated sexual abuse. Waters' counsel argued if the jury believed "the direct testimony from the alleged victim," it could find no evidence of "penetration of any kind" and could only return a verdict on abusive sexual contact. The government disagreed, noting that the victim testified Waters had touched her unclothed "middle" and that the jury could also consider the pediatrician's testimony of an injury consistent with penetration. The court agreed with the government and denied Waters' request, noting he had professed complete innocence. Waters' counsel again objected, asserting based on the victim's "testimony on direct examination" there was no evidence of aggravated sexual abuse. The court then asked

if he was moving for a judgment of acquittal. Counsel indicated he was, and the court denied the motion.

About two months after the jury returned a guilty verdict, Waters filed a motion for a new trial based on newly discovered evidence, relying on a sworn statement in which the victim recanted her testimony that Waters had touched her. The court denied the motion, finding that in the circumstances of the case the recantation was not credible.

## DISCUSSION

Waters first argues that the district court erred in denying his request for a Daubert hearing. He concedes he has no evidence which establishes the reliability of polygraph examinations, but argues his ability to gather the necessary evidence was hampered by the government's failure to comply with his discovery requests. We need not address any Daubert or discovery issues. The district court independently excluded the evidence under Fed. R. Evid. 403, which provides for exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time . . .." Here, the court stated it would not admit the evidence because it would go to a collateral matter and cause confusion as to the weight of the evidence. The court did not abuse its discretion. In Scheffer, the Supreme Court noted the legitimate "risk that juries will give excessive weight to the opinions of a polygrapher, clothed as they are in scientific expertise." 523 U.S. at 313-14. The Court also noted that "litigation over the admissibility of polygraph evidence is by its very nature collateral," id. at 314-15, thereby "prolong[ing] criminal trials and threaten[ing] to distract the jury from its central function of determining guilt or innocence." Id. at 315.

Nor, contrary to Waters' argument, did the court err in refusing to admit evidence of his responses to the examination. His reliance on United States v. Rothgeb, 789

F.2d 647 (8th Cir. 1986) is misplaced. In Rothgeb, although the results of a polygraph examination were inadmissible, this court held that a district court had not abused its discretion in allowing the government, which did not mention the polygraph examination, to introduce evidence that during an interrogation the defendant had denied committing the charged offense, but held his breath, "pant[ed] like a dog" and "sweated profusely during the questioning." Id. at 651. Rothgeb did not, and could not, overrule the rules of evidence. Fed. R. Evid. 801(d)(2) provides that an out-of-court statement offered "against a party" is not hearsay. In contrast here, Waters, not the government, sought to introduce "a prior statement consistent with his plea of not guilty." United States v. Greene, 995 F.2d 793, 798 (8th Cir. 1993). "Such statements, when offered by the defendant, are hearsay, except in narrow circumstances not present here." Id; see also United States v. Chard, 115 F.3d 631, 635 (8th Cir. 1997) (defendant's attempt to introduce out-of-court exculpatory statements properly excluded as hearsay).

Waters also argues the district court abused its discretion in admitting the social worker's testimony, asserting she improperly "opine[d] as to a child witness's credibility." United States v. Rouse, 111 F.3d 561, 571 (8th Cir.), cert denied, 118 S. Ct. 261 (1997). We disagree. The social worker "never gave [her ] opinion as to whether [the victim] was telling the truth." United States v. Running Horse, 175 F.3d. 635, 638 (8th Cir. 1999). Rather, she merely "'inform[ed] the jury of characteristics in sexually abused children.'" Id. (quoting United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993)); see also United States v. Johns, 15 F.3d 740, 743 (8th Cir. 1994) (psychologist's testimony properly admitted because it "was circumscribed so as to educate rather than to usurp the role of the jury"). Although on appeal Waters suggests

that the testimony did not meet the <u>Daubert</u> standard for reliability,[3] because he did not raise this argument in the district court, we do not consider it.

We next address Waters' argument that the district court erred in refusing his request for a lesser included offense instruction. A "'prerequisite for a lesser included offense instruction [is] that the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater.'" <u>United States v. Two Bulls</u>, 940 F.2d 380, 381 (8th Cir. 1991) (per curiam) (quoting <u>Schmuck v. United States</u>, 489 U.S. 705, 716 n.8 (1989), <u>cert. denied</u>, 502 U.S. 1065 (1992). In this case,"[i]t is undisputed that abusive sexual contact is a lesser included offense of aggravated sexual abuse." <u>Id.</u> (citing <u>United States v. Demarrias</u>, 876 F.2d 674, 676 (8th Cir.1989)). However, it is disputed whether "there is some evidence which would justify conviction of the lesser offense." <u>United States v. Parker</u>, 32 F.3d 395, 400-01 (8th Cir. 1994) (emphasis and internal quotation omitted).

On appeal Waters primarily argues there is evidence to support a conviction of abusive sexual contact based on the victim's testimony on cross-examination that she had told an FBI agent that Waters touched her over her clothing. We do not believe Waters has properly preserved this argument for appeal. "We have repeatedly held that an objection 'must call attention to the specific fact situation that would require giving the lesser included offense instruction.'" <u>United States v. Oakie</u>, 12 F.3d 1436, 1442 (8th Cir. 1993) (quoting <u>United States v. Young</u>, 875 F.2d 1357, 1360 (8th Cir. 1989)). On the day of the jury conference Waters filed a memorandum in support of his request for a lesser included offense instruction which relied on the victim's testimony on cross-examination. However, when the district court asked counsel to set forth the evidence warranting the instruction, counsel based his argument solely on the victim's direct

_____

[3]We note in <u>Kumho Tire Co. v. Carmichael</u>, 119 S. Ct. 1167, 1171 (1999), the Supreme Court extended <u>Daubert</u> to "testimony based on 'technical' and 'other specialized' knowledge."

examination. "Because [Waters] failed to give the district court an opportunity to rule on th[e] theory [raised on appeal], we may only consider it under the plain error standard." Id.

In any event, we find no error, much less plain error. Waters offered the victim's testimony concerning her prior statement that he had touched her over her clothes only for impeachment purposes, not as substantive evidence for the truth of the matter asserted. Indeed, the court instructed the jury that "[t]he credibility of a witness may be attacked by introducing evidence that on some former occasion the witness made a statement on a matter of fact or acted in a manner inconsistent with his or her testimony," but cautioned the jury it "must not consider any such prior statement as establishing the truth of any fact contained in that statement." At oral argument before this court, Waters suggested that the prior statement could be considered as substantive evidence because on re-cross examination, he asked the victim if the statement was true. We disagree. Waters' closing argument to the jury makes clear that he was not asking the victim to adopt the statement as true, but shows quite the opposite. Waters argued that the victim was not credible because "she admitted to you in her testimony that she had lied about what she had told the FBI agent in the past." In particular, counsel pointed out that the victim "said she had lied to the agent about [Waters] touching her over her clothing."

Waters also argues, as he did in the district court, that there was evidence to support an instruction on abusive sexual contact based on the victim's direct examination, relying on her testimony that Waters had touched her "butt." We disagree. As the district court found, this testimony was isolated and when considered in the context of all the evidence, including the victim's testimony that in addition to touching her "butt," Waters had touched her "in [her] private places," and the doctor's testimony, we do not believe a rational jury could find that all Waters did was touch the victim's buttocks. See United States v. Harrison, 55 F.3d 163, 167 (5th Cir.) ("This testimony, when considered in isolation, arguably might support a lesser-included

offense instruction . . . but, when considered in the context of the other evidence, it does not."), cert. denied, 516 U.S. 924 (1995). This court has "never held . . . that a defense [instruction] must be submitted to the jury even when it cannot be said that a reasonable person might conclude the evidence supports the defendant's position." United States v. Kabat, 797 F.2d 580, 591 (8th Cir. 1986) (internal quotation omitted), cert. denied, 481 U.S. 1030 (1987). "'[W]hile a judge cannot prevent a jury from rejecting the prosecution's entire case, he [or she] is not obligated to assist the jury in coming to an irrational conclusion of partial acceptance and partial rejection of the prosecution's case.'" United States v. Mansaw, 714 F.2d 785, 792 (8th Cir.) (quoting United States v. Cady, 495 F.2d 742, 748 (8th Cir. 1974)) , cert. denied, 464 U.S. 964 (1983).[4]

Last, Waters argues the district court abused its discretion in denying his motion for a new trial based on the victim's recantation. "Courts look upon recantations with

_____

[4]Waters points out that a defendant's claim of innocence does not necessarily preclude the giving of a lesser included offense instruction, as long as there is evidence to support the instruction. United States v. Plenty Arrows, 946 F.2d 62, 66 (8th Cir. 1991). Contrary to Waters' argument, this case is unlike Plenty Arrows. In Plenty Arrows, this court held the victim's testimony that the defendant had "touched him on the 'back of [his] behind'" was insufficient evidence of aggravated sexual abuse, but was sufficient evidence of abusive sexual contact. Id. at 67. Here, although we believe there was sufficient evidence of penetration of the victim's vagina, the victim's testimony that after she took off her underpants Waters touched her "in [her] private places" and touched her "middle" where "you go to the bathroom" was "sufficient to establish that she was the victim of a 'sexual act' which the statute defines as intentional touching of the unclothed genitalia." United States v. Eagle, 137 F.3d 1011, 1014 (8th Cir. 1998). Rather, this case is similar to United States v. Two Bulls, 940 F.2d 380 (8th Cir. 1991), cert. denied, 502 U.S. 1065 (1992), in which this court held that the district court did not err in refusing to give a lesser included offense instruction on abusive sexual contact. In that case, the victim's testimony established aggravated sexual abuse and because the defendant had "professed complete innocence . . . his testimony could not support a conviction on any offense." Id. at 382.

suspicion." <u>United States v. Miner</u>, 131 F.3d 1271, 1273 (8th Cir. 1997). Moreover, "skepticism about recantations is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon . . .." <u>Id.</u> (quoting <u>United States v. Provost</u>, 969 F.2d 617, 621 (8th Cir. 1992), <u>cert. denied</u>, 502 U.S. 1056 (1993)). Here, the district court carefully considered all the circumstances of the case in concluding the recantation was not credible, and we will not reverse its decision.

**CONCLUSION**

Accordingly, we affirm the judgment.

**BRIGHT, Circuit Judge, dissenting.**

The majority of our panel concludes that the district court properly refused to give a jury instruction for the lesser offense of abusive sexual contact and that the district court properly refused to grant a <u>Daubert</u> hearing on the admissibility of polygraph evidence supporting the defendant's professed innocence. The majority justifies its conclusion by ruling that the defendant did not properly preserve the jury instruction issue for appeal. The majority has further ruled that the polygraph evidence was inadmissible under FED. R. EVID. 403. I disagree on both issues. The majority interprets precedent to require an unnecessarily high standard of specificity when lawyers request jury instructions during trial. In addition, Rule 403 is an improper basis for affirming the district court's exclusion of the polygraph evidence: the polygraph evidence was relevant, and the district court erred when it failed to hold a <u>Daubert</u> hearing on the test's reliability.

*BACKGROUND*

On September 23, 1998, a jury convicted Clifton Waters of the aggravated sexual abuse of his seven-year-old daughter, M.W., primarily on the basis of testimony

-10-

about one December evening around Christmas 1996.[5]  Before indictment, the FBI administered a polygraph examination on Waters.  During this exam, an FBI agent asked Waters whether he had committed elements of aggravated sexual abuse:  the questions were specific, targeted at the essence of the crime, and highly relevant.  The agent asked the following:

> A. Did you ever place your fingers in [the victim's] vagina? . . .
> B. Did you ever touch [the victim's] private areas in a sexual way? . . .

App. at 17.

Waters answered both questions in the negative.  The examiner determined that his answers were nondeceptive.  Before trial, defendant requested information about the polygraph test from the government.[6]  The government ignored the discovery request.  Both before trial and during trial, the defense requested that the polygraph evidence be admitted.  The district court ruled that the defense had not satisfied its burden of showing that a <u>Daubert</u> hearing was necessary; the court did not take notice of  the federal government's abuse of the discovery process by refusing to turn over evidence in its possession concerning the polygraph exam taken at the government's behest.  TT 144-45.

At trial, the victim's testimony reflected her reticence and confusion about the details of the abuse.  Despite the confusion, all of the other witnesses indicated that, during the sexual abuse of M.W., at least one other man, Duane Fire Thunder, was

---

[5]Most of the government's evidence focused on one evening during December 1996, although the government also presented some testimony that sexual abuse occurred one evening in the summer of 1996.  TT 29-30, 33.

[6]This request asked for information such as: the full listing of all questions asked of defendant by examiner, the examiner's training and experience in administering polygraph exams, and information regarding the type of polygraph procedures used.

present in the room where the abuse occurred. TT 27. Fire Thunder's presence that night placed the victim's already equivocal identification of Waters as the perpetrator in further doubt because Fire Thunder could have committed the crime. *After trial*, the victim recanted her trial testimony and identified Fire Thunder as the man who had abused her.

As the trial came to a close, the defendant requested a jury instruction for the lesser included offense of abusive sexual contact. The district judge denied the request, finding that no rational jury could convict the defendant of abusive sexual contact, and not convict on the aggravated sexual abuse charge.

### *Instruction on the Lesser Included Offense of Abusive Sexual Contact*

As a procedural matter, the majority holds that the defendant did not properly preserve this issue for appeal because he failed to specify facts from the victim's direct examination that supported his request for an instruction. Such a holding misconstrues the meaning of the phrase "specific fact situation." Under United States v. Oakie, 12 F.3d 1436 (8th Cir. 1993), a defense attorney must articulate to the presiding judge the "specific fact situation" that constitutes grounds for a lesser included instruction to the district judge. The defense must rely on that "fact situation" and the rationale stated at trial when arguing its case on appeal. See Oakie, 12 F.3d at 1442 (citing FED. R. CRIM. P. 30).

In this case, Waters' request for an instruction complied with the Oakie requirements. Although the defendant now broadens the number of references to the record, he has presented substantially the same facts on appeal that he did at trial to

support the legal theory he used to make his original request. TT 164-69.[7] The context of the conversation between the judge and defense counsel indicates that counsel was referring to the victim's entire testimony when pointing out facts that supported giving an instruction on the lesser charge.[8] Without a daily transcript, the trial court, which also has heard the evidence, should not require an enumeration of every statement of fact, only a general "fact situation." In this case, the judge was aware of the inconsistencies in the victim's testimony but improperly relied on the weight of the evidence and also rejected portions of the testimony because the defendant testified that he was innocent.[9]

---

[7]At trial, defense counsel stated the following upon being asked to "outline the facts scenario" that would justify the giving of a lesser included offense instruction:

> It's my recollection based on notes I took during the alleged victim's direct testimony, . . . that [Waters] allegedly asked her to take off her pants and started touching her front and back. Then a guy came up. There was no testimony of any penetration of any kind at that point.
>
> . . . .
>
> She described another time at her house in Rockyford in the trailer house; said [Waters] told her to take off her pants, touched both private places. Still no evidence of any penetration of any kind. . . . Based on that direct testimony from the alleged victim, there is no evidence of aggravated sexual abuse. . . . And by the way, she also testified [Waters'] clothes were on in both incidents. TT 168.

[8]Some of the facts necessary for defendant to make a successful argument arose through cross-examination of the victim. To the extent that her answers on cross-examination impeached the victim's testimony, the jury could disregard some of M.W.'s assertions.

[9]After allowing the government to rebut the defense counsel's argument, the district court stated:

While a district court has wide discretion in formulating jury instructions, a defendant is entitled to a jury instruction "if the request is timely, the evidence supports the [instruction], and the proffered instruction correctly states the law." United States v. Brown, 33 F.3d 1002, 1004 (8th Cir. 1994).

Abusive sexual contact is a lesser included offense of aggravated sexual abuse. United States v. Two Bulls, 940 F.2d 380, 381 (8th Cir. 1991). The difference between the two crimes turns upon whether there is a forced "sexual act" – necessary for aggravated sexual abuse – or "sexual contact" – required for abusive sexual contact. To receive the instruction, the defendant must show that the proof is sufficiently in dispute that the jury could find the defendant innocent of the greater and guilty of the lesser included offense. United States v. Eagle Hawk, 815 F.2d 1213, 1215 (8th Cir. 1987). Under federal law, a "sexual act" involves either penetration or touching *the genitalia[10] underneath the clothing* of a person younger than sixteen years old; "sexual contact" involves only touching – either directly or over the clothes – of the genitalia and other specified body parts, such as the buttocks. See 18 U.S.C. § 2246(2),(3)

---

In this case the Court believes that there is no evidence that could possibly support a conviction on the lesser included offense of abusive sexual contact. The defendant took the stand; he steadfastly denied any touching of any kind, either sexual contact or sexual abuse. He now wishes to improve on his theory of defense which was that nothing happened, but in isolation hang his hat on a simple statement about contact about touching on the butt. . . . [T]here was . . . overwhelming evidence of penetration of the vaginal area indeed to the extent that the hymenal ring had completely disappeared. . . . [T]he victim testified that the sexual act was committed on her and if the jury credits her testimony, it would be compelled to find aggravated sexual abuse which, of course, was confirmed by Dr. Lori Strong. . . . [T]he defendant has professed complete innocence so his testimony could not support a conviction on either offense. TT 170-71.

[10]Under 18 U.S.C. § 2246(2)(D) (1998), a sexual act does not include the intentional touching of the buttocks.

-14-

(1998) (emphasis added). To succeed, the defendant must show that the jury could have found him guilty of sexual contact but not guilty of engaging in a forced sexual act. See Two Bulls, 940 F.2d at 381.

M.W. testified on direct examination that Waters had penetrated her vaginal area with his fingers and, in fact, his whole hand. However, on cross-examination she testified that he had not penetrated her. TT 54. Most importantly, it was unclear from her testimony whether he had touched her underneath her clothing at all. TT at 40-43. If a rational jury could find that Waters had not penetrated M.W., nor had he touched her genitalia beneath her clothing but that he had engaged in sexual contact, then the defendant satisfied his burden. There existed a reasonable doubt about whether he committed aggravated sexual abuse. Failure to give the instruction amounted to an abuse of discretion because, in light of the victim's entire testimony and its inconsistencies, a rational jury could have found the lesser and not the greater offense. Where the single witness to the crime was a seven-year-old victim – confused and traumatized not only by the abuse, but by the trial as well – who could not clearly and consistently articulate what had happened to her, a lesser included offense instruction,

under the evidence in the case, should have been submitted to the jury.[11]  The error was harmful to the defendant and should be reversed.

### *The Polygraph Evidence*

Polygraph test results take on special importance when evidence is sparse and the primary witness's testimony is highly unreliable.  In such situations, polygraph exams that are performed with the latest techniques and that inquire into the central elements of the crime charged become increasingly relevant because they add to the jury's otherwise minimal knowledge base.  Polygraph test results should be treated as highly relevant, as in a case such as this one, when very little consistent evidence is presented to the jury.

---

[11]The district court justified its decision, in part, by drawing an analogy to United States v. Two Bulls, 940 F.2d 380 (8th Cir. 1991).  The district court cited Two Bulls for the proposition that if a defendant professes complete innocence, the defendant cannot ask for an instruction on a lesser included offense.  TT 171-72.  This is not the rule of Two Bulls, nor is it the general rule upon which district judges should determine whether to give a lesser included instruction.  In Two Bulls, the victim claimed that Two Bulls and another man raped her, while the defendant claimed he was absent when the victim was raped.  The victim clearly identified the defendant as the perpetrator, and the evidence showed that rape had occurred.  No evidence of abusive sexual contact existed.  See Two Bulls, 940 F.2d at 382.  In a situation like that in Two Bulls, no rational jury could find that abusive sexual contact, but not rape, had occurred:  the defendant insisted he was not present during the crime, but the crime committed was clearly rape.  This case is distinguishable for three reasons:  (1) the victim's own testimony raised the question of whether the greater or lesser offense occurred; (2) the evidence presented did not clearly show that aggravated sexual abuse and not abusive sexual contact had occurred; and (3) the defendant did not claim to be absent at the time of the offense – he merely maintained that he did not commit the act charged.

### *The Polygraph Test and Rule 702*

Although the Supreme Court has upheld per se exclusions of polygraph evidence in the military, see United States v. Scheffer, 118 S. Ct. 1261 (1998), per se exclusion of polygraph evidence is not the rule of the Eighth Circuit, nor in other circuits in a non-military context. See, e.g., United States v. Williams, 95 F.3d 723 (8th Cir. 1996). Polygraph test results may be admissible when the indices of reliability are present. Studies have shown that polygraph results can be accurate as much as 97.5% of the time, and even critics of the polygraph place its accuracy at 70%. The Supreme Court has articulated particular factors that affect polygraph reliability, such as: the examiner's integrity, independence, choice of questions, or training in the detection of deliberate attempts to provoke misleading physiological responses. See Scheffer, 118 S. Ct. at 1276 (Stevens, J., dissenting). Reliability of polygraph test results will also depend on the polygraph technique used; there are a number of different questioning tactics that use different logical assumptions to detect lies. See United States v. Gilliard, 133 F.3d 809, 812-14 (11th Cir. 1998). Another index of reliability, present in this case, is the type of result: exculpatory polygraphs are more reliable than inculpatory ones because the test tends to create false positives rather than false negatives. 118 S. Ct. at 1276.

Because the reliability of any polygraph exam must be assessed in a particularized inquiry, a Daubert hearing will generally be required to determine admissibility. The district court's failure to grant a hearing based on a generalized "lack of consensus" about the reliability of polygraph evidence creates a de facto per se exclusion, and as such, commits an error of law. TT 2, 144-47. The district court must enable the parties to develop the facts necessary to make a particularized determination of reliability. Such is the role of "gatekeeper" required by Daubert. See Kumho Tire v. Carmichael, 119 S. Ct. 1167, 1175 (1999) (citing Daubert, 509 U.S. at 591).

Some statements in the record suggest that the district court may have denied the Daubert hearing because the defense did not establish sufficient foundation for the claim that this particular exam was reliable. If that were the court's rationale, then the district court erred in failing to require the prosecution to give the defense the information it requested under Fed. R. Crim. P. 16(a)(1)(D) (1999). Because the particularized inquiry into the particular polygraph examination sits at the crux of the matter, the government clearly obstructed the defendant's burden of establishing a foundation for a Daubert hearing when it did not produce the polygraph evidence requested by defendant. Such government action borders on infringement of the Brady rule. See Brady v. Maryland, 373 U.S. 83 (1963).

A Daubert hearing need not be granted as a matter of course before a Rule 702 determination can be made on a polygraph exam; however, the basic information necessary to determine the reliability of a polygraph exam should be present and available to the court. In this case, it was clear that the government possessed the relevant information but declined to disclose essential facts. When such facts could be made readily available, but are not, a court should presume that further investigation and discussion of the matter is necessary.

This court cannot know whether the polygraph evidence was sufficiently reliable to warrant admission into trial because the government never revealed, and the district court never heard, the information necessary to determine such reliability. One wonders, however, why the government so often uses polygraph tests if it believes its results are unreliable. Justice Stevens notes this very point in his Scheffer dissent: "It is incongruous for the party that selected the examiner, the equipment, the testing procedures, and the questions asked of the defendant . . . to challenge the competence of the procedures that it has developed and relied upon in hundreds of thousands of cases." 118 S. Ct. at 1278. The government cannot administer polygraph tests to whomever it chooses, and then, depending on the outcome, decide whether those results should be admitted at trial. It may be that, when the government administers the

-18-

polygraph exam, the district court should employ a presumption of reliability of the polygraph results.

The rejection of polygraph evidence on the basis of FED. R. EVID. 403 seems inappropriate when the foundation and background of the tests remain hidden. Rule 403 reads:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The polygraph test could be extremely relevant and under proper instructions, would not unfairly prejudice the government, confuse the issues, cause delay or waste time. Obviously the evidence would not be cumulative. However, the Rule 403 issue would need to await the results of the Daubert hearing.

### CONCLUSION

The trial judge sentenced Waters to fourteen years imprisonment for a crime in which his guilt remains in serious question. Accordingly, I would grant him a new trial on the lesser included offense instruction issue and require the prosecution to provide discovery for a Daubert hearing on the admissibility of the polygraph evidence.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

-19-