**UNITED STATES of America,**
**Plaintiff,**

v.

**Guy Randy WHITE HORSE,**
**Defendant.**

**No. CR. 01–50002–01–KES.**

United States District Court,
D. South Dakota,
Western Division.

Nov. 13, 2001.

Greg Peterman, Assistant U.S. Attorney, Rapid City, SD, for Plaintiff.

Gary Colbath, Assistant Federal Public Defender, Rapid City, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

SCHREIER, District Judge.

■■ The United States of America moves to exclude the proposed expert testimony of Dr. Donald A. Janz. Defendant, Guy Randy White Horse, opposes the motion.

### FACTS

■■ White Horse, a Native American, is charged with sexually abusing his son on the Pine Ridge Indian Reservation. White Horse's attorney hired Dr. Janz to conduct a psychosexual evaluation of White Horse. This evaluation included a mental status examination and clinical interview of White Horse and the Abel Assessment for Sexual Interest ("Abel Assessment"). Dr. Janz concluded that White Horse did not have a sexual interest in underage boys, and White Horse intended to offer this testimony during the guilt phase of his case in chief.

■■ On October 15, 2001, the court held an evidentiary hearing regarding the admissibility of Dr. Janz's testimony. The hearing primarily addressed whether the Abel Assessment would be admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The court heard testimony from Dr. Gene Abel, the individual who developed the Abel Assessment, Dr. Janz, and Dr. Susan Sachsenmaier.

■■ The Abel Assessment is comprised of two parts. Part I measures the amount of time a subject views slides of clothed and partially clothed people. The premise is that a consistent correlation exists between sexual response and the length of time spent viewing sexual stimuli. Part I of the Abel Assessment also incorporates a questionnaire that delineates such things as sexual behaviors, cognitive distortions, and information related to social desirability. The completed questionnaire is scored and then combined with the viewing time results. Part II was recently developed and is described in an article published in 2001; Abel, Jordan, Hand, Holland and Phipps, *Classification Models of Child Molesters Utilizing the Abel Assessment for Sexual Interest*, Child Abuse and Neglect: The International Journal, 25(5), 703–718. The Part II analysis subjects the combined score from Part I to three predictive logistic regression equations. The equations produce a probability score that predicts the subject's interest in girls under the age of 14, boys under the age of 14 and liar-deniers.

## DISCUSSION

██ The admission of scientific evidence is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." Dr. Janz's extensive experience in the area of diagnosis and treatment of individuals with sexually-oriented mental problems qualifies him as an expert. What is at issue is the validity and reliability of the Abel Assessment, and Dr. Janz's proposed testimony regarding the results of White Horse's psychosexual evaluation.

### [¶ 6] I. Part I of the Abel Assessment for Sexual Interest

██ [¶ 7] The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) established four non-exclusive factors to determine whether a particular expert's methodology satisfies Rule 702:(1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the methods used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

██ [¶ 8] The first *Daubert* element requires evidence that the Abel Assessment has been tested. Dr. Abel performed a research study which tested Part I of the Abel Assessment. The results of the study were published in Sexual Abuse: A Journal of Research and Treatment, Vol. 10, No. 2, at 81–95. At least four independent studies of the Abel Assessment have also been conducted which found Part I to be valid. There is no evidence, however, that the Abel Assessment has been tested using a statistically significant sample of Native American subjects. According to the undisputed testimony of Dr. Sachsenmaier, the Lakota culture teaches it is impolite for a person to make prolonged eye contact with another person. It has not been determined whether the cultural reluctance of Lakota people to make eye contact could skew results in a test based on viewing time. In addition, while the Abel Assessment measures differences in visual reaction time to slides of white children, white adults, African–American children, and African–American adults, none of the slides used as sexual stimuli contained any pictures of Native American adults or children. The court finds the validity of the Abel Assessment has not been sufficiently tested with regard to Native American subjects.

[¶ 9] The second element requires peer review of the Abel Assessment. There are multiple independent reviews of the Abel Assessment methodology. *See United States v. Robinson*, 94 F.Supp.2d 751, 752 (W.D.La.2000). The reviews have not been uniformly positive, but they are sufficient to substantiate peer review.

[¶ 10] The third element is the known or potential rate of error. Dr. Abel's own study of the Abel Assessment concludes that almost one quarter of admitted pedophiles were inaccurately classified as non-pedophiles. *See* Gene Abel et al., *Screening Tests for Pedophilia*, 21 CRIMINAL JUSTICE AND BEHAVIOR 115–131 (1994). The court finds that a 24 percent rate of false negative results does not assist the jury in understanding the evidence or determining a fact in issue.

[¶ 11] The fourth element is the acceptance of the Abel Assessment within the scientific community. The Association for Treat-

ment of Sexual Abusers (ATSA) has found that penile plethysmograph (PPG) testing is usually preferred over viewing time measures in the assessment of deviant sexual interests. ATSA PRACTICE STANDARDS AND GUIDELINES, 2001, at 49. Dr. Abel and Dr. Janz are both members of ATSA. While ATSA prefers the use of the PPG over the Abel Assessment, even the PPG is not accepted by the medical profession as a reliable or valid diagnostic tool. DSM–IV–TR, 569 (2000). The PPG is also not accepted by courts as admissible evidence. *See, e.g., United States v. Powers*, 59 F.3d 1460, 1471 (4th Cir.1995). In light of ATSA's conclusions, the court finds that the Abel Assessment has not achieved widespread acceptance within the scientific community.

■ [¶ 12] After balancing these four factors, the court finds that Part I of the Abel Assessment does not satisfy the admissibility requirements of *Daubert*. Moreover, there are significant problems with the Abel Assessment that extend past the *Daubert* analysis. The Abel Assessment also rates the subject's social desirability and level of cognitive distortion. Dr. Janz testified that the cognitive distortion score measures whether a person is changing their thinking to justify their actions of being sexually involved with children. White Horse's score fell in the problematic category. Dr. Janz further testified that the social desirability scale measures whether the subject is in all likelihood responding truthfully. Dr. Janz would testify that White Horse's score indicates he was responding truthfully. Assessing the reliability or credibility of a witness is the exclusive function of the jury. *See, e.g., United States v. Rouse*, 111 F.3d 561, 570 (8th Cir.1997). No evidence was offered by White Horse to show that the social desirability and level of cognitive distortion portions of the Abel Assessment are as reliable as a polygraph test to determine the truthfulness of a person's responses.

Polygraph exams are not admissible. *See United States v. Waters*, 194 F.3d 926, 930 (8th Cir.1999). Thus, Part I of the of the Abel Assessment is an impermissible comment on White Horse's credibility which would not be admissible even if the Abel Assessment did meet the *Daubert* standard.

[¶ 13] **II. Part II of the Abel Assessment for Sexual Interest**

■ [¶ 14] Relevance is defined by Rule 401 of the Federal Rules of Evidence as "[a]ny evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." White Horse is charged with aggravated sexual abuse of his son. Part II of the Abel Assessment predicts the probability of the subject molesting children as well as whether the subject is a liar-denier. According to Dr. Janz, White Horse's test results were inconclusive and not valid. Inconclusive test results do not have a tendency to make the existence of any consequential fact more or less probable and, therefore, the test results are not relevant. The Abel Assessment even contains a warning that probability values can never determine guilt or innocence and should only be used for the first assessment of a subject.

[¶ 15] Furthermore, the Part II results of the Abel Assessment test are not admissible because White Horse is accused of an incest only offense. According to Dr. Abel's 2001 published article, incest-only cases were excluded from the study because incest offenders often act for reasons other than sexual interest. Abel, Jordan, Hand, Holland and Phipps, *Classification Models of Child Molesters Utilizing the Abel Assessment for Sexual Interest*, Child Abuse and Neglect: The International

Journal, 25(5), 705. In addition, there has been no peer review of Part II and there is no evidence that it is widely accepted in the scientific community. Part II of the Abel Assessment is, therefore, not admissible because it does not meet the *Daubert* standards.

### [¶ 16] III. Mental Status Examination and Clinical Interview of White Horse

 [¶ 17] Dr. Janz interviewed White Horse regarding his account of the incident. This testimony was offered by White Horse as part of Dr. Janz's psycho-sexual assessment. White Horse does not contend that the statements are admissible under Federal Rule of Evidence 803(4) as a statement made for the purpose of diagnosis or treatment. Any statement made by White Horse to Dr. Janz when offered as evidence by White Horse constitutes a prior statement consistent with the defendant's plea of not guilty. *See United States v. Waters,* 194 F.3d 926, 931 (8th Cir.1999). "Such statements, when offered by the defendant, are hearsay, except in narrow circumstances not present here." *Id.* (quoting *United States v. Greene,* 995 F.2d 793, 798 (8th Cir.1993)). As such, the statements when offered by White Horse are excluded as hearsay.

[¶ 18] Accordingly, it is hereby

[¶ 19] ORDERED that the United States of America's motion in limine (docket 49) to exclude expert testimony is granted.