# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-1174

———————

Russell Hubbeling,              \*
                                \*
   Petitioner - Appellant,      \*
                                \*   Appeal from the United States
v.                              \*   District Court for the
                                \*   District of South Dakota.
United States of America,       \*
                                \*
   Respondent - Appellee.       \*

———————

Submitted:  November 14, 2001

Filed:  May 3, 2002

———————

Before LOKEN, LAY, and HEANEY, Circuit Judges.

———————

LOKEN, Circuit Judge.

Russell Hubbeling and four codefendants were charged with twenty-three counts of aggravated sexual abuse of young girls in their extended family in violation of 18 U.S.C. § 2241(c).  After a lengthy trial, the jury convicted Hubbeling of sexually abusing his seven-year-old niece, T.R., and twenty-month-old niece, F.R. He was sentenced to thirty years in prison, and we affirmed the convictions on direct appeal.  United States v. Rouse, 111 F.3d 561 (8th Cir. 1997), reconsidering 100 F.3d 560 (8th Cir. 1996).  Hubbeling then filed a motion for post-conviction relief under 28 U.S.C. § 2255, asserting that he was denied effective assistance of counsel when his attorney (1) failed to make a timely motion or provide adequate foundation under

Federal Rule of Evidence 412 for the admission of evidence concerning T.R.'s past sexual activity; (2) did not object when an FBI agent testified to what three young victims said during initial interviews; and (3) did not argue insufficiency of the evidence on appeal. The district court[1] denied the motion.

After Hubbeling filed a notice of appeal, we remanded to the district court to consider whether the issues raised in his § 2255 motion merited a certificate of appealability, which may issue only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). The district court granted a certificate, explaining:

> The record in this case contains some evidence suggesting that Petitioner received ineffective assistance of counsel by failing to make a motion 15 days before trial regarding Rule 412 evidence in a child sexual abuse case and also by failing to introduce specific instances of prior sexual behavior by a victim to provide an explanation of an alternate source of injury to the victim. . . . Given these circumstances, the issue deserves further proceedings in the Eighth Circuit.

(Emphasis added). A certificate of appealability "shall indicate which specific issue or issues satisfy the showing required by paragraph (2)." § 2253(c)(3). Despite the unambiguous limitation in his certificate, Hubbeling has argued all three ineffective assistance theories on appeal. We limit our review to the Rule 412 evidence issue specified in the order granting a certificate. See Ramsey v. Bowersox, 149 F.3d 749, 759 (8th Cir. 1998), cert. denied, 525 U.S. 1166 (1999).[2] We affirm.

---

[1]The HONORABLE LAWRENCE L. PIERSOL, Chief Judge of the United States District Court for the District of South Dakota.

[2]Had Hubbeling filed a motion to expand the certificate of appealability, we would have denied it. Hubbeling's trial counsel objected to the FBI agent's hearsay testimony, which we upheld on direct appeal. See 111 F.3d at 569-70. And the evidence was clearly sufficient to convict Hubbeling of sexually abusing both nieces.

## The Rule 412 Evidence Claim.

One of the victims was Hubbeling's seven-year-old niece, T.R. On the day before trial, defendants gave notice of their intent to introduce evidence that T.R. had engaged in prior sexual activity. The government objected that defendants had not complied with Rule 412 of the Federal Rules of Evidence.[3] Before trial began, the district court heard argument on this issue and ruled that the evidence defendants proposed to introduce fell within Rule 412, that some was inadmissible general

[3]Rule 412 provides in relevant part:

**(a) Evidence generally inadmissible.** The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):

(1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.

\* \* \* \* \*

**(b) Exceptions.** (1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:

(A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury or other physical evidence . . . .

\* \* \* \* \*

**(c) Procedure to determine admissibility.** (1) A party intending to offer evidence under subdivision (b) must

(A) file a written motion at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court . . . permits filing during trial . . . .

\* \* \* \* \*

(2) Before admitting evidence under this rule the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard.

reputation evidence, and that defendants had known about the possibly admissible Rule 412 evidence for almost three months and had failed to comply with the Rule by giving timely notice and a written offer of proof. Accordingly, the court granted the government's motion to exclude defendants' Rule 412 evidence at trial "on the basis of the record, as it currently exists."

On direct appeal, defendants challenged this preliminary ruling, arguing the district court abused its discretion because defendants effectively gave timely Rule 412 notice in another pretrial pleading. We agreed with the district court that defendants had failed to comply with Rule 412's procedural requirements and upheld the court's discretionary ruling. See 111 F.3d at 569. Accordingly, in this § 2255 proceeding, Hubbeling first argues that counsel's failure to comply with the procedural requirements of Rule 412 was ineffective assistance that prejudicially affected the trial. Post-conviction relief for ineffective assistance of trial counsel requires proof of prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Like the district court, we reject Hubbeling's contention because counsel's procedural mistake caused no prejudice. As we will explain, the district court revisited the Rule 412 issue during trial and ultimately excluded defendants' proposed evidence for reasons other than their initial untimely Rule 412 notice.

At the close of the pretrial argument on Rule 412 issues, the district court noted that the Rule provides for exceptions to its notice requirement and that some of the defendants' undisclosed evidence might be admissible under the Rule. Therefore, the court stated, its ruling "is without prejudice to a proper showing that the defense might make at some later point in the trial." Defendants returned the very next day with a renewed Rule 412 motion. This renewed effort is the focus of Hubbeling's alternative ineffective assistance argument: counsel was ineffective in failing to present evidence that an eleven-year-old boy, T.R.'s cousin M.R., had told a defense

investigator that he had sex twice with T.R. This evidence would have been admissible under Rule 412(b)(1)(A), Hubbeling contends, because it was evidence of specific sexual activity by the victim offered to prove that a person other than the accused was the source of the victim's injury.

When defendants renewed their Rule 412 motion before the second day of trial, they submitted the written reports of M.R.'s interviews with FBI and defense investigators. Both reports said M.R. "admitted to having sex with" T.R. The defense investigator's interview notes stated, in pertinent part:

> [M.R.] admitted to having sex with [T.R.]. He said he knows what sexual intercourse is and he calls it "boning". . . . He said he and [T.R] had sex in the back room of the house on one occasion and out in the field on another occasion.

The district court heard lengthy arguments on the renewed motion. Defendants argued the evidence that M.R. had sex with T.R. would fall within the injury exception in Rule 412(b)(1)(A). The government responded (i) T.R. denied having sexual intercourse with M.R., (ii) the victims and other young children in the extended family used words like "sex" with great imprecision, and (iii) it was unlikely that any sexual activity between T.R. and an eleven-year-old boy could have been an alternate source of the considerable physical injuries to T.R.'s genitalia. After hearing these competing arguments, the district court took a cautious approach to the issue:

> [W]ith regard to [T.R. and M.R.] . . . I don't know if the Government is going to present that testimony [by the examining doctors] whether this injury came from this assault . . . . [T]he defense isn't charged with having to anticipate that. [O]nce the Government puts [evidence] in . . . with regard to injury, then the defense could [argue] that the issue to which such evidence relates has newly arisen in the case. . . . I'm leaving that issue open and, of course, if the Government does present

-5-

testimony that this injury came from this assault . . . and . . . if the defense does bring it up then, then we would have, among other things . . . a hearing because I would have to have a [Rule] 403 balancing under that and also the defense would have to make a showing of relevancy and a very specific offer of proof with regard to what they're proposing to go into under [Rule] 412 . . . .

So that is the ruling of the Court with regard to [Rule] 412. The Motion is denied for the Defendants to introduce [Rule] 412 evidence, except with regard to the injury. . . . I'm leaving the issue, as I have described it on the injury issue alone, depending on what the Government's proof is. If the Government doesn't go into that, then you don't need that evidence.

Later that trial day -- only 115 pages later in the transcript -- the government's first medical witness, Dr. Richard Kaplan, described the physical injuries to T.R.'s genitalia he found during his examination of the young girl. Dr. Kaplan found that T.R. had "obvious trauma and contusion . . . and very much tenderness" on her labia majora. He testified that T.R. told him one of the defendants "hurt me there," and opined that his physical findings were "suggestive of child sexual abuse." The following day, Dr. Michael Ferrell, who performed a colposcopic examination of the victims at Dr. Kaplan's request, described T.R.'s physical injuries. Dr. Ferrell found that T.R.'s "hymenal ring was essentially gone" and her entire vaginal area was irritated and opined that these injuries were consistent with the alleged sexual abuse.

Even though the district court had expressly invited defendants to reopen the question whether M.R.'s testimony would be admissible under the injury exception in Rule 412(b) if the government introduced this type of medical testimony, none of the five defendants again raised this issue, despite the fact that they called M.R. as a defense witness later in the trial. Why did counsel not pursue this Rule 412 injury issue? The answer is not, as Hubbeling argues, that defense counsel overlooked the defense investigator's report of his interview with M.R., or that counsel ineffectively

failed to present that report to the district court as injury evidence admissible under Rule 412. All defendants had made that argument to the court in their renewed Rule 412 motion. The § 2255 record sheds no light on their failure to reopen the issue after the government's medical witnesses testified on the injury issue, because Hubbeling did not come forward with an affidavit from any of the five defense attorneys explaining their approach to this issue at trial.

We conclude that we need not determine why counsel failed to press this issue at trial because, had M.R. testified to the sexual activity he described to the two investigators, his testimony would not have affected the verdict against Hubbeling. In other words, Hubbeling suffered no Strickland prejudice as a result of his counsel's failure to attempt to introduce this evidence.

Over the course of this lengthy trial, the government presented substantial evidence supporting its case, including testimony by the young victims describing how their uncles had abused them; corroborating child hearsay testimony by FBI Agent Van Roe, a social worker, and a foster mother who had extensive contact with the children; and considerable medical evidence of sexual abuse from Dr. Kaplan and Dr. Ferrell. In addition, Dr. Randall Alexander, a member of the Board of Governors of the National Committee to Prevent Child Abuse, testified that it takes considerable force to inflict injuries such as those that T.R. suffered. M.R.'s vague assertions regarding two prior instances of sexual contact with T.R. likely would not have convinced the jury that such contact was the source of the significant injuries that T.R. suffered. M.R.'s statements failed to indicate that his alleged sexual contact with T.R. occurred near the time of her physical examinations, or that his sexual contact with T.R. involved the use of force, or resulted in injuries and pain that were consistent with T.R.'s vaginal injuries. Even if the jury believed M.R.'s story, they were unlikely to conclude that this inter-child sexual activity provided an alternate explanation for the extensive injuries discovered during T.R.'s medical examinations. Thus, on this record, there is no reasonable probability that testimony by an eleven-

year-old boy that he engaged in consensual sexual activity with T.R. would have altered the jury's finding that Hubbeling sexually assaulted his two young nieces.

The judgment of the district court is affirmed.

HEANEY, Circuit Judge, concurring.

I agree with the majority's conclusion that Hubbeling is not entitled to relief on his ineffective assistance of counsel claim. However, I write separately to address the concerns I have with the federal government's inability to effectively deal with the disproportionate number of child sexual abuse cases emanating from South Dakota's Indian Reservations.

In 1997, I wrote about the plethora of convictions in the United States District Court for the District of South Dakota involving Native Americans and the sexual abuse of children that are presented to this court. See United States v. Miner, 131 F.3d 1271, 1274-75 (8th Cir. 1997). A review of child sexual abuses cases that have been presented to this court since that time reveals that this behavior continues to be prevalent in the South Dakota Indian Reservations, and that the United States Department of Interior, the Bureau of Indian Affairs, and tribal leadership have failed to take actions to eliminate the causes of the abuse.[4]

---

[4]See e.g. United States v. Bruguier, 161 F.3d 1145 (8th Cir. 1998) (sexual abuse of seventeen-month-old girl); United States v. Looking, 156 F.3d 803 (8th Cir. 1998) (sexual abuse of six-month-old girl); United States v. Magpie, No. 98-1227, 1998 WL 453694 (8th Cir. July 28, 1998) (sexual abuse of six-year-old girl, four-year-old girl, and five-year-old boy); United States v. Eagle, 133 F.3d 608 (8th Cir. 1998) (sexual assault of mentally handicapped thirteen year-old-girl); United States v. Red Bird, No. 97-2429, 1998 WL 50959 (8th Cir. Feb. 10, 1998); United States v. Eagle, 137 F.3d 1011 (8th Cir. 1998) (sexual abuse of eight-year-old girl); United States v. Mound, 149 F.3d 799 (8th Cir. 1998) (sexual abuse of ten-year old girl); United States v. Crow, 148 F.3d 1048 (8th Cir. 1998) (sexual abuse of ten-year old

As my colleague Judge Bright noted in <u>Miner</u>, the high incidence of child sex abuse on South Dakota's Indian reservations is partially attributable to the impoverished, overcrowded living conditions facing many Native American families in these areas.  <u>See</u> <u>Id.</u> at 1275 (Bright, M.,  concurring).  The prevalence of alcohol abuse on the reservations is another contributing factor.  Yet, the federal government continues to concentrate its resources on the investigation and prosecution of sexual abuse cases, and the treatment of victims of sexual abuse.  While such programs are necessary, I would suggest that to reduce the incidence of child sexual abuse in the future, federal funds and policies must be directed towards alleviating the conditions

---

girl); <u>United States v. Running Horse</u>, 175 F.3d 635 (8th Cir. 1999); <u>United States v. Waters</u>, 194 F.3d 926 (8th Cir. 1999) (sexual abuse of nine-year-old girl); <u>United States v. Marrowbone</u>, 211 F.3d 452 (8th Cir. 2000) (sexual abuse of sixteen-year-old boy); <u>United States v. Withorn</u>, 204 F.3d 790 (8th Cir. 2000) (rape of twelve-year-old girl); <u>United States v. Kirkie</u>, 261 F.3d 761 (8th Cir. 2001) (sexual abuse of eleven-year-old girl); <u>United States v. Blue</u>, 255 F.3d 609 (8th Cir. 2001) (sexual abuse of twenty-one-month-old girl); <u>United States v. Eagle Feather</u>, No. 00-2663, 2001 WL 59051 (8th Cir. Jan. 25, 2001); <u>United States v. Gabe</u>, 237 F.3d 954 (8th Cir. 2001); <u>United States v. Black Bull</u>, No. 01-1332, 2001 WL 792550 (8th Cir. July 16, 2001) (sexual abuse of six-year-old girl); <u>United States v. Red Cloud</u>, No. 00-2604, 2001 WL 474762 (8th Cir. May 7, 2001); <u>United States v. Bull</u>, No. 01-2944, 2002 WL 113839 (8th Cir. Jan. 30, 2002); <u>United States v. White Horse</u>, 177 F. Supp.2d 973 (D.S.D. 2001); <u>United States  v. Azure</u>, No. CR-99-30077, 1999 WL 33218402 (D.S.D., Oct 19, 1999); <u>United States. v. Arcoren</u>, No. CR-89-30049, 1999 WL 638244 (D.S.D., Jul 27, 1999).

which give rise to such abuse. Living conditions on the reservations must be improved, and alcoholism must be effectively treated, or future generations of Native American children will continue to be scarred by the trauma of this crime.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.