# IN THE COURT OF APPEALS OF IOWA

No. 14-1250
Filed February 24, 2016


**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**TERRY DENNIS FOTH,**
      Defendant-Appellant.
_____


Appeal from the Iowa District Court for Dallas County, Randy V. Hefner, Judge.


Terry Foth appeals from his conviction and sentence for domestic abuse assault causing bodily injury. **CONVICTION AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED.**


Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Heather Ann Mapes (until withdrawal) and Kevin Cmelik, Assistant Attorneys General, for appellee.


Considered by Vogel, P.J., Vaitheswaran, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**VOGEL, Presiding Judge.**

Terry Foth appeals from his conviction and sentence, following a jury trial, for domestic abuse assault causing bodily injury. Foth asserts the district court erred when it excluded evidence that the victim allegedly made prior false accusations of domestic abuse; furthermore, he argues, trial counsel was ineffective for failing to assert the admission of this evidence was constitutionally required. He also contends the court imposed an illegal sentence when it taxed attorney fees and costs associated with one charge, on which he was acquitted.

We conclude the district court properly excluded testimony regarding the victim's prior allegations of domestic abuse, as the allegations were not shown to be false, and such evidence would have confused the issues being tried; therefore, the prejudice substantially outweighed its probative value. Moreover, the admission of this evidence was not constitutionally required, and trial counsel was not ineffective for failing to assert this argument in his objection. We further conclude the attorney fees, as a whole, were properly taxed to Foth; however, Foth should only be taxed for one-half of the costs associated with his prosecution, as he was only convicted of one of the two charges. Consequently, we affirm his conviction but vacate the portion of the sentence taxing all costs to Foth and remand for entry of an amended sentencing order.

## I. Factual and Procedural Background

At trial, the jury could have found the following facts. On December 11, 2012, police responded to a report that Renea Simon had been assaulted. At trial, Simon testified that Foth, who was engaged to Simon, had assaulted her several times over the course of the evening. Specifically, Simon claimed the

two argued and Foth shoved Simon several times, slammed her against a wall, knocked her down, and caused her to hit her head on the kitchen floor. Sitting on top of her, Foth pounded her backwards, again hitting her head against the floor. Simon attempted to scream, but Foth covered her mouth, forcefully pressing his hand and arm into her face and throat. Foth then put one hand around her throat, while hitting her in the face with the other, which Simon testified left her with fingernail marks near her mouth and on her neck. When Foth put both hands around her throat, Simon was afraid that Foth was going to choke her to death. After this assault Simon lost consciousness.[1]

When Foth went outside, Simon was also able to leave the apartment to look for help. No one responded when she knocked on her neighbors' doors. When she observed Foth still outside the apartment, Simon ran back inside. To prevent Foth from reentering, Simon locked both the front door and kitchen door, propping a chair against the kitchen door. However, Foth returned, kicked in the kitchen door—causing the chair to break—and reentered the apartment. Simon testified that Foth became even more aggressive when he entered the home the second time. After Foth again assaulted Simon in the kitchen, he went upstairs to pack some of his belongings and left the residence.

During the assault, Foth shattered Simon's cell phone. Needing someone to call the police on her behalf, Simon used Foth's laptop to post a message on Facebook. As a response to the post, a friend called the police. The authorities arrived and noted the home was in disarray. At trial, Officer Woods testified:

---

[1] She further testified she suffers from seizures, that she has a service dog to help her with this condition, and that she may have had a seizure following Foth's assault. She testified Foth struck the dog, leaving him dazed during the assault.

It seemed not normal of what a kitchen would look like. A chair was overturned, one of the legs was broken on the chair, there was some scuffing, looked like fresh scuff marks near the refrigerator on the wall, a picture looked like it either had been thrown down or had fallen off the wall because it was shattered and there were shards of glass on the ground. It looked like something had happened in that room.

He further stated Simon also had red marks and scratches on her neck, a scratch down her side where her sweatshirt was torn, marks on her lips from the blood, and bruising on her face. The officers testified she did not appear intoxicated.

Simon refused ambulance transportation to the hospital that evening out of concern for the cost; however, she went to a medical clinic the following day. At trial, Anne Barner, the physician's assistant who examined Simon, testified she observed bruising around Simon's nasal cavity, blood inside her nose, soft tissue swelling, and bruising over her bilateral jaw. X-rays were taken of Simon's nose and elbow, which indicated the presence of a nasal fracture. At trial, Barner testified the injuries were consistent with Simon's descriptions of the assault.

Foth's version of events differed dramatically from Simon's. He testified he returned home around 5:00 p.m. and found Simon in "a puddle on the couch," claiming she was visibly intoxicated with slurred speech, stumbling movements, poor motor skills, and she "reeked of alcohol." He testified that he confronted her about her intoxication and that she then became argumentative. Foth claims he went upstairs to pack his belongings, Simon kicked him in the buttocks, and he carried the suitcase out to his vehicle. Foth stated he then returned to continue packing, and when Simon attempted to kick him once more, he dodged her kick, and she fell down the stairs. He testified he watched her fall and grunt as her body hit the steps and the floor, but he did not check on her condition. Although

he admitted to breaking the kitchen chair and Simon's cell phone, he stated he did so out of spite. To corroborate Foth's statement regarding Simon's alcohol use, he subpoenaed Aaron Simon, Simon's ex-husband. Aaron testified Simon had a history of alcohol abuse, and as a result, he had full custody of their two minor children.

A trial information, as later amended, charged Foth with (Count I) domestic abuse assault by strangulation, a class "D" felony in violation of Iowa Code sections 236.2, 708.1, and 708.2A(5) (2011),[2] and (Count II) domestic abuse assault, a serious misdemeanor, in violation of Iowa Code sections 236.2, 708.1, and 708.2A(2)(b). On June 20, 2014, the State filed a motion in limine seeking to exclude character evidence of Simon, including specific instances of conduct, reputation, or opinion evidence pursuant to Iowa Rules of Evidence 5.404, 5.608, and 5.609. It also argued testimony by Aaron Simon should be excluded. Argument on the motions was held prior to voir dire, and the court sustained the State's motions pending further foundation.

Trial commenced on July 1, 2014. On cross-examination of Aaron, Foth sought to elicit testimony regarding Simon's prior accusations of domestic abuse; an offer of proof was made, attempting to establish the falsity of Simon's previous complaints. During the offer of proof, Aaron stated Simon had made two prior accusations against him, which he alleged were false. In November 2008, Aaron was charged with domestic abuse assault causing bodily injury, a serious misdemeanor under Iowa code section 708.2A(2)(b), after Simon claimed Aaron

---

[2] The amendment included, in part, a correction to the code section, charging Foth under Iowa Code section 708.2A(5), as opposed to section 708.2A(4A), which was the section charged in the original trial information.

had thrown a can of vegetables at her. He was also charged with a violation of a no-contact order. Aaron recalled that a judge dismissed the violation of the no-contact order in January 2009 and that the State dismissed the domestic abuse charge March 2009 "due to insufficient evidence" but with the proviso that Aaron complete a psychological evaluation and anger management classes.

Aaron further testified during the offer of proof that in May 2009, while in the midst of a custody dispute in the couple's divorce proceedings, Simon accused him of smashing her face into a steering wheel. The next day, Simon was treated for a broken nose and a concussion. Although a police report was filed, Aaron was not charged and no investigation occurred; additionally, and in connection with that incident, Aaron claimed Simon had sought a second protection order, but a judge refused to issue one. Aaron also claimed Simon made false reports to the Iowa Department of Human Services as to Aaron's abuse of her and the children, but none of those instances were sufficiently documented in the offer of proof. Aaron also described various incidents in which Simon became intoxicated, but none appeared to be complaints of domestic abuse or result in any credibility determination. Therefore, only the two incidences described above were part of Aaron's claim that Simon had made false accusations of domestic abuse.

In rebuttal, the State proffered evidence, further eliciting testimony from Aaron, regarding the dissolution court ordering him to complete anger management classes. Moreover, while Aaron also attempted to show Simon had accused her ex-boyfriend, William Phillips, of assault causing bodily injury, a serious misdemeanor, the State claimed this allegation actually resulted in a

guilty plea by Phillips to the lesser-included offense of simple assault. Based on all the proffered evidence, the State argued Foth failed to establish Simon's prior accusations were false such that they would be relevant in the current action. The district court found the domestic abuse assault charge as well as Phillips's conviction appeared to have been factually supported, and the incident of hitting Simon's head into the steering wheel was neither reported nor investigated and, therefore, lacked a judicial credibility determination. It further found the prior incidents and allegations were not relevant, were factually complicated, and would only serve to confuse the jury such that the prejudice of introducing the evidence substantially outweighed any probative value.

Trial resumed, and on July 2, 2014, the jury found Foth guilty of the lesser-included offense (Count I) of domestic abuse assault causing bodily injury, in violation of Iowa Code sections 708.2A(1) and 708.2A(2)(b). It acquitted Foth of the charge under Count II. Foth filed a motion for new trial, which the court denied. The sentencing hearing was held on August 1, 2014, and the district court sentenced Foth to a term of incarceration of 365 days, with all but thirty days suspended, followed by two years of probation. It further ordered Foth to pay the costs of the prosecution and court-appointed attorney fees. Foth appeals.

## II. Standard of Review

We review evidentiary claims based on the rules of evidence for an abuse of discretion. *State v. Rodriguez*, 636 N.W.2d 234, 242 (Iowa 2001). Our review of constitutional issues is de novo. *State v Predka,* 555 N.W.2d 202, 204 (Iowa

1996). We review claims of an illegal sentence for correction of errors at law. *State v Freeman*, 705 N.W.2d 286, 287 (Iowa 2005).

**III. Evidentiary Claim**

Foth first asserts the district court erred when it excluded evidence of Simon's prior allegations of domestic abuse. He argues he produced sufficient evidence to sustain a jury determination of falsity with regard to those allegations, pursuant to rule 5.104(b).[3] Furthermore, he argues, the district court abused its discretion when ordering that testimony concerning the prior allegations was inadmissible under rule 5.403.

The determination of whether to admit evidence is a two-step inquiry. First, there must be a finding of whether the evidence is relevant, that is, whether it has probative value and, second, whether said probative value is substantially outweighed by the danger of unfair prejudice or confusion. *See Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000).

Here, the probative-value finding rests on whether the proffered evidence sufficiently established that Simon's previously-alleged assaults were, in fact, false. The evidence would then be relevant for the jury to determine Simon's credibility. *See Millam v. State*, 745 N.W.2d 719, 723 (Iowa 2008) (noting evidence of false claims of sexual abuse is relevant to the determination of the victim's credibility); *see also* Iowa R. Evid. 5.404. Here, the offer of proof was

---

[3] This rule concerns relevancy conditioned on fact, and states: "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Iowa R. Evid. 5.104(b).

made so the court could evaluate whether the accusations were false, and therefore relevant.

While the district court found Foth proffered sufficient evidence to allow the jury to decide whether Simon's past allegations were false, the court moved to the second step, analyzing whether the proffered evidence was unfairly prejudicial. Pursuant to Iowa Rule of Evidence 5.403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See also State v. Albert*, 722 N.W.2d 402, 411 (Iowa 2006) (noting that testimony regarding the victim's prior sexual behavior was relevant to her credibility, and that the probative value of such evidence was not substantially outweighed by the resulting prejudice).

Thus, if Foth established in the offer of proof that Simon had made previous false allegations, that would be probative evidence within the meaning of Iowa Rule of Evidence 5.404 and admissible as long as such probative value is not substantially outweighed by unfair prejudice.[4] *See State v. Baker*, 679 N.W.2d 7, 12 (Iowa 2004) (noting false claims of sexual abuse were admissible to show the witness's credibility).

---

[4] We do not agree with the State's argument that Foth retained the burden of proof to show—by a preponderance of the evidence—that the prior accusations were false. This showing and standard of proof is a rule under Iowa's rape-shield laws; however, there is no equivalent to the rape-shield law with regard to domestic violence cases. *See Millam*, 745 N.W.2d at 723; *see also* Iowa R. Evid. 5.412(b). Indeed, the district court determined Foth did not need to show falsity by a preponderance of the evidence but rather by "some foundation." We, however, need not definitively resolve the standard of proof in order to review the district court's conclusion that the proffered evidence was more prejudicial than probative under Iowa Rule of Evidence 5.403.

When an offer of proof is inconclusive and the parties dispute the facts, it triggers a mini-trial unrelated to the case currently being tried; thus, the submission of the issue to the jury—when there was a dispute over whether Simon's prior accusations were false—constituted an "increased . . . danger of jury confusion and speculation." *See United States v. Tail*, 459 F.3d 854, 861 (8th Cir. 2006).

In summarizing the evidence from the offer of proof, the district court noted: "The prior incident is complicated, as evidenced by the length of the offer of proof . . . . There is a strong likelihood that delving into these issues involving Mr. Simon is going to confuse the jury." The record supports the court's conclusions. Aaron's testimony covered a number of years during which Simon allegedly made various false accusations of domestic abuse. Nonetheless, the only clear incidents—as revealed by Aaron's testimony—included a situation where he threw a can of corn at Simon. While the charge was eventually dismissed, Aaron agreed to undergo a psychological evaluation and anger management classes. Further, in the dissolution of marriage proceedings, Simon accused Aaron of hitting her head into the car steering wheel, causing a broken nose and concussion. This did not involve a criminal complaint nor was there any judicial credibility finding. As the court summarized:

> I think that under [5.]404 it may be up to the jury, but the evidence regarding Mr. Simon's conduct—well, the relationship between Mr. Simon and Ms. Simon is so complex, and the incident that is most relevant never resulted in any type of criminal investigation or any type of complaint to authorities, as near as I can tell from the record.
> The one incident that did result in a criminal complaint, the tossing of a can of corn, something did happen. I mean, that's pretty clear to me, and, thus, the probative value of that evidence is

minimal. In general, the general testimony that she made numerous complaints about domestic abuse, that's unfair to the State without more specificity so we can sort it out and determine how relevant it is and how much time we're going to spend talking about it.

We agree. The relationship between Aaron and Simon, as former spouses, is complicated and acrimonious; therefore, testimony by Aaron regarding the alleged false accusations would have confused or misled the jury and severely delayed trial on the charge actually at issue. Consequently, the court did not abuse its discretion when excluding any evidence concerning Simon's previous allegations of domestic abuse. *See id.*; *see also United States v. White Horse*, 316 F.3d 769, 776 (8th Cir. 2003) ("[T]he trial court retains wide discretion to exclude evidence that would result in a 'collateral mini-trial' because both sides characterize the event at issue differently.").

## IV. Ineffective Assistance

Foth next contends that trial counsel was ineffective when he failed to argue at trial that the admission of Simon's prior accusations was constitutionally required, as he asserts this bore on Simon's credibility and was therefore exculpatory evidence. He claims counsel should have argued that exclusion of the proffered evidence violated Foth's confrontation and due process rights under the United States and Iowa Constitutions.[5]

A defendant may raise an ineffective-assistance claim on direct appeal if the record is adequate to address the claim. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We may either decide the record is adequate and issue a ruling on the merits, or we may choose to preserve the claim for postconviction

---

[5] Foth does not make separate arguments under the Iowa Constitution.

proceedings. *Id.* To succeed on this claim, the defendant must show, first, that counsel breached an essential duty and, second, that he was prejudiced by counsel's failure. *Id.*

A defendant's due process and confrontation-clause rights are violated if they are not presented with the opportunity to cross-examine the prosecution's witnesses. *See State v. Rainsong*, 807 N.W.2d 283, 289 (Iowa 2011) (noting "the Confrontation Clause prohibits the use of testimonial hearsay evidence unless the declarant testifies at trial or the right to confrontation is otherwise sufficiently honored"). Procedural due process rights require a fair opportunity for the defendant to provide evidence and argument in defense against the State's case. *See State v. Seering*, 701 N.W.2d 655, 665–66 (Iowa 2005).

Given that Foth had ample opportunity to cross-examine Simon, his right to confront the witnesses against him was satisfied. *See Rainsong*, 807 N.W.2d at 289. Moreover, the exclusion of inadmissible evidence does not rise to the level of a constitutional violation with regard to due process, and Foth otherwise had ample "opportunity to be heard." *See Seering*, 701 N.W.2d at 666. Therefore, no constitutional rights were violated when the evidence was excluded. Counsel is not ineffective for failing to pursue a meritless issue; consequently, given Foth's argument would have been rejected, the failure of trial counsel to raise these constitutional claims does not constitute ineffective assistance. *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999). Thus, Foth's claim in this regard is without merit.

**V. Illegal Sentence**

Foth's final argument asserts the district court imposed an illegal sentence when it taxed attorney fees and costs associated with count two, of which he was acquitted. Thus, he claims this portion of the court's sentence is illegal and should be vacated.

When imposing its sentence, the district court ordered Foth to "pay restitution for attorney fees pursuant to section 815.9 for any costs incurred as certified by the public defender or the amount of $1,500.00, whichever is less"—if he was represented by court-appointed counsel—as well as "the costs of prosecution pursuant to section 815.13."[6]

Under Iowa Code section 910.2, the district court has the authority to order a defendant to pay certain fees and costs associated with the prosecution of the case. *See* Iowa Code § 910.2 (governing the court's ability to order the defendant to pay restitution "[i]n all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered"). This may include "court costs" as well as "court-appointed attorney fees ordered pursuant to section 815.9," which states, "[T]the person shall be required to reimburse the state for the *total* cost of legal assistance provided." *See* Iowa Code § 815.9 (emphasis added).

Foth relies on *State v. Petrie*, 478 N.W.2d 620 (Iowa 1991), for the proposition that *both* attorney fees and costs are attributable to the defendant when a judgment of guilty is entered, and therefore, only the attorney fees and

---

[6] The court's citation to Iowa Code section 815.13 is not the applicable statute, as this section governs fees and costs recoverable from the defendant when the county or city prosecutes a case. *See* Iowa Code § 815.13.

costs associated with the conviction should be assessed. However, the statute on which the *Petrie* court relied was amended several times since that opinion was issued. Specifically, *Petrie* cited Iowa Code section 910.2, which was subsequently amended to refer the district court back to section 815.9 in making its restitution assessments. *See Petrie*, 478 N.W.2d at 621–22; *compare* Iowa Code § 910.2 (2001), *with id.* § 815.9. Section 815.9 was also amended in 2000, adding language stating: "[T]he person shall be required to reimburse the state for the *total* cost of legal assistance provided . . . ."[7] Iowa Code § 815.9(3).

Given this statutory framework and case law, the imposition of all the indigent person's attorney fees is within the court's authority. Attorney fees are not associated with a single charge when there is more than one count; rather, these fees arise as a consequence of Foth's entire defense, for both the conviction and the charge upon which he was acquitted. *See State v. Dudley*, 766 N.W.2d 606, 624 (Iowa 2009) ("As an *acquitted* defendant, Dudley may have been liable for the costs of his defense, but certainly not for the court costs."). Consequently, this portion of the sentence is not illegal.

However, unlike the "legal assistance" fees allowed under section 815.9(3), court costs are considered restitution under Iowa Code section 910.2 (2011); consequently, costs are still governed by *Petrie*, and assessed only when a "judgment of conviction is rendered." Therefore, a defendant cannot be taxed

---

[7] Iowa Code section 815.9(3) (2011) provides:
> If a person is granted an appointed attorney, the person shall be required to reimburse the state for the total cost of legal assistance provided to the person pursuant to this section. *"Legal assistance"* as used in this section shall include not only the expense of the public defender or an appointed attorney, but also transcripts, witness fees, expenses, and any other goods or services required by law to be provided to an indigent person entitled to an appointed attorney.

costs regarding a dismissed charge. *See id.* § 910.2(1). As Foth was only convicted of one of two charges, the costs associated with his prosecution should be proportionate, that is he should be assessed one-half of the costs. *See Petrie*, 478 N.W.2d at 622 (noting—with regard to costs—that only those "costs attributable to the charge on which a criminal defendant is convicted should be recoverable under a restitution plan").[8] Consequently, we vacate the costs portion of Foth's sentence and remand for entry of an order consistent with this opinion.

In all other regards, we affirm Foth's conviction and sentence.

**CONVICTION AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED.**

---

[8] We further note that no distinction is made in either case law or statute between court costs imposed pursuant to dismissed charges—that is, as in the case of *Petrie*, when the defendant pled guilty to one charge and the State dismissed the others—versus when a defendant is acquitted of a charge following trial. *See Petrie*, 478 N.W.2d at 621–22.